UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RUSSEL H. DAWSON, Personal Representative of the Estate of Damaris Rodriguez, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SOUTH CORRECTIONAL ENTITY ("SCORE"), a Governmental Administrative Agency, et al., <br><br> Defendants. | CASE NO. C19-1987 RSM <br><br> ORDER RE: MOTIONS TO DISMISS AND MOTION TO AMEND COMPLAINT |

## I. INTRODUCTION

This matter comes before the Court on Defendants' Motions to Dismiss (Dkts. #22 and #44) and Plaintiffs' Motion to Amend Complaint (Dkt. #41). For the reasons stated below, the Court DENIES Defendants' Motions and GRANTS Plaintiffs' Motion.

## II. BACKGROUND

**A. Facts in the Complaint**

For purposes of ruling on the Motions to Dismiss, the Court will accept all facts in the Complaint (Dkt. #1) as true. The Court will briefly summarize these facts as necessary for ruling on this Motion. All factual assertions are from the Complaint except as otherwise noted.

Plaintiffs in this case are Russel Dawson, personal representative of the estate of Damaris Rodriguez, Ms. Rodriguez's husband Reynaldo Gil, and their children. Defendants are South Correctional Entity Jail ("SCORE"), NaphCare, Inc., and roughly two dozen individuals associated with the jail and/or NaphCare.

On December 30, 2017, Ms. Rodriguez had a mental health emergency while at her home in SeaTac. Her husband, Reynaldo Gil, called 911 and requested medical assistance. The police arrived and, due to a confrontation of some kind, arrested Ms. Rodriguez.

Ms. Rodriguez was taken directly to SCORE. SCORE's medical personnel were provided by NaphCare, a for-profit, in-custody, medical contractor.

The Complaint alleges that Ms. Rodriguez was severely mistreated at the hospital and denied adequate medical care. The details of this treatment, while central to Plaintiffs' claims, are not central to the instant Motions to dismiss. Ms. Rodriguez developed ketoacidosis and died in custody four days later.

The Complaint is 50 pages and over 250 paragraphs long. Dkt. #1. Many of these pages and paragraphs deal with the necessary nuts and bolts of a Complaint with over two dozen Defendants. The remaining paragraphs detail moment-by-moment the location, health, care, and supervision of Ms. Rodriguez over four days of detention. At times the details are graphic in nature or describe lewd behavior. For example:

> At approximately 1:26 pm on 12/31/2017, MHP Lothrop became aware of Damaris's state of psychosis and additional information, including but not limited to the facts that: Damaris was talking to herself, singing and dancing at inappropriate times, attempting to flirt at inappropriate times, responding to attempts at conversation with "oral fart noises," and touching her pubic area.

Dkt. #1 at ¶ 95. At times the Complaint dials up the detail to the maximum limit:

> While she was in cell B-05, Damaris experienced the following symptoms and behavior that clearly indicated medical and mental

health problems: vomiting and/or "dry heaving," unintelligibly yelling, responding to and conversing with hallucinations, dancing with herself, touching her genitalia and breasts in view of jail staff, stumbling in circles, grabbing her buttocks, lying on her face, standing in the corner of the room, hitting the door, not eating, throwing food around the cell and in the toilet, removing food from the toilet and throwing it again, spontaneously smiling, putting her head on the floor, staring at and striking a mirror, throwing her underwear, spinning around in circles, throwing toilet paper around her cell, rubbing food on her face, talking to the toilet, crying hysterically, throwing clothing in the sink, staring down the drain in the floor, pounding her chest, and other erratic behavior. The following individuals observed Damaris doing some or all of the above-mentioned activities—or otherwise became aware of fact Damaris was doing some or all of the above mentioned activities via conversations with other NaphCare and/or SCORE staff and/or audio/video surveillance and/or written documents—and did not facilitate mental health or medical treatment: CO Bryant, CO Palmore, CO Timm, Sgt. Burdulis, CO Cedillo, CO Orlando, CO Charboneau, CO Fields, CO Fayant, CO Westgaard, CO McDonough, CO Saeturn, CO Allen, CO Jaramillo, CO Marken, CO Gaud-Feliciano, CO Brown, CO Welch, CO Olson, CO Mossberg, CO Lester, CO Zeine, CO Dore, CO Daumit, CO Jovanovich, CO Hansen, CO Bishop, Sgt. Thomas, DON Tambe, RN Martin, MHP Lothrop, RN Wallace, and RN Mukwana. Each of these individuals had actual or constructive knowledge that Damaris had not yet been screened for medical or mental health problems and had not yet received treatment.

*Id.* at ¶ 102. The Complaint contains several similar paragraphs to this one, listing observable symptoms at different times and listing who observed them. *See, e.g., id.* at ¶ 143.

Several pages are devoted to the alleged policies of SCORE and NaphCare. 12 prior inmate incidents are included as evidence of notice. *Id.* at ¶ 186. These prior incidents are not gratuitous in length; they are presented each in their own short paragraph over four total pages.

Plaintiffs bring claims under: common law negligence, § 1983 for cruel and unusual punishment and excessive use of force, the Fourteenth Amendment for deprivation of familial relationship, common law assault and battery, ADA failure to provide reasonable

accommodations, common law false imprisonment and violation of court rules, Sixth Amendment speedy trial rights, and Washington's Public Records Act.

B. Procedural History

This case was filed on December 5, 2019. Dkt. #1. On December 31, 2019, certain Defendants including NaphCare filed a Motion to Dismiss under Rules 8 and 12. Dkt. #22. On January 23, 2020, Plaintiffs filed a Motion to Amend to add new Defendants. Dkt. #41. Plaintiffs note in that Motion that "the Proposed First Amended Complaint does not materially change any content related to NaphCare, Inc.'s pending Motion to Dismiss (Dkt. #22)." *Id*. at 3. On January 30, 2020, certain other Defendants including SCORE filed a Motion to Dismiss. Dkt. #44. The Court has determined that it can rule on all three of these Motions in one order.

III. DISCUSSION

A. Legal Standards under Rules 8 and 12

Rule 8(a) states that a pleading that states a claim for relief must contain "a short and plain statement of the grounds for the court's jurisdiction," "a short and plain statement of the claim showing that the pleader is entitled to relief," as well as "a demand for the relief sought…" Fed. R. Civ. P. 8(a). The purpose of the short and plain statement rule is to provide defendants with "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and internal quotation marks omitted). Although normally "verbosity or length is not by itself a basis for dismissing a complaint," *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131 (9th Cir. 2008), the Ninth Circuit has stated in several cases that excessive length combined with opaque or confusing language is enough to permit dismissal under this rule. *See Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1058-59 (9th Cir. 2011) (*citing, inter alia, Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 415 (9th Cir. 1985)).

In making a 12(b)(6) assessment, the court accepts all facts alleged in the complaint as true and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted). However, the court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. at 678. This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Absent facial plausibility, a plaintiff's claims must be dismissed. *Id*. at 570.

The Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F2d 880, 885 (9th Cir. 1983). "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded. … Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994). Motions to strike "are generally disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice." *Nelson v. United States Fed. Marshal's Serv.*,

2017 U.S. Dist. LEXIS 38980, *3-4, 2017 WL 1037581 (W.D. Wash. 2017) (citing *Rosales v. Citibank*, 133 F.Supp.2d 1177, 1180 (N.D. Cal. 2001)).

**B. Defendants' Motions to Dismiss under Rules 8 and 12**

Defendants essentially argue that Plaintiffs' Complaint is too long, too graphic, too full of legal argument, and too confusing to properly answer. They argue that the Complaint contains irrelevant references to incidents involving other inmates. They move to dismiss under Rule 8(a) and Rule 12(b)(6), and to strike portions of the Complaint under Rule 12(f). *See* Dkts. #22 and #44.

In two separate Responses, Plaintiffs argue that the length, graphic detail, legal argument, and references to other inmates are required to adequately plead their case under the *Twombly/Iqbal* standard. Dkts. #43 and #46. Plaintiffs cite to Defendant NaphCare's own briefing from another case, which stated: "a Section 1983 plaintiff cannot recover under a 'custom' theory by simply producing evidence of the single, isolated incident of which he complains…. [r]ather, a plaintiff must prove a pattern of 'persistent and widespread' unconstitutional conduct…" Dkt. #43 at 9 (citing *Smith v. NaphCare*, Case No. 3:16-cv-05667-BHS, Dkt. #49). Of course, even if NaphCare had not previously stated this, pleading a pattern of persistent and widespread unconstitutional conduct, and doing so beyond mere labels and conclusions, is arguably necessary for Plaintiffs' § 1983 claims to survive a motion to dismiss under the *Twombly/Iqbal* standard.[1]

On Reply, the NaphCare Defendants argue that Plaintiffs' technique of incorporating the fact pattern into the legal claims instead of repeating the pertinent facts for each claim and each

---

[1] A local government entity "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Under such circumstances a municipality is liable if the individual can establish that the municipality "had a deliberate policy, custom, or practice that was the 'moving force' behind the constitutional violation he [or she] suffered." *Id*. at 694-95; *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007); *Galen v. County of Los Angeles*, 477 F.3d 652, 667 (9th Cir. 2007).

Defendant constitutes "shotgun pleading" or "puzzle pleading" as those terms have been used in other cases. Dkt. #45 at 4–5.

The Court has thoroughly reviewed the Complaint and finds that Rules 8(a) and 12(b)(6) are satisfied. Defendants have been provided with "fair notice of what the... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Plaintiffs state much more than labels and conclusions, and although not every claim recites again and every fact that supports it, the Court finds that the briefing and record indicate that Defendants should be more than able to connect the dots.[2] There is nothing particularly puzzling about the underlying circumstances of this case and what is being alleged against whom. Even if Plaintiffs present over a hundred paragraphs of detail, they only concern events at one location over four days, and Plaintiffs have gone out of their way to articulate which individuals were present at various times. The Court does not believe Plaintiffs are attempting to hide the ball or have hidden it.

Defendants cite to case law for the proposition that a pleading that says "too much" may be dismissed under the above standards. However, unlike *Knapp v. Hogan*, 738 F3d 1106, 1109 (9th Cir 2013) or *Cafasso, supra*, where the pleading at issue was found to be confusing or incoherent, the instant Complaint is understandable and the level of detail arguably necessary to inform Defendants of the basis for Plaintiffs' claims under § 1983. The Court in *Cafasso* did not state that length alone was grounds for dismissal under this rule, and in any event was dealing

---

[2] Defendants argue, "[a]s stated, the allegations require NaphCare to weed through 249 paragraphs of Plaintiffs' Complaint, many of which are entirely immaterial, inflammatory, and redundant, in order to determine which are relevant to this particular claim." Dkt. #22 at 4. Yes and no. Yes, Defendants are required to weed through a lengthy Complaint; this is what attorneys are paid for. No, not all 249 paragraphs need to be considered as possibly supporting the claims—as previously stated, Plaintiffs have organized the Complaint into categories for the convenience of the reader. While the Complaint is not going to win awards for brevity, it is not "incoherent rambling" or "replete with redundancy and largely irrelevant." *See id.* at 3 (citing *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F3d 1047, 1058 (9th Cir 2011); *McHenry v. Renne*, 84 F3d 1172, 1177-80 (9th Cir 1996)).

with a complaint that was 733 pages long and described as "a tome approaching the magnitude of *War and Peace*." *Id*. at 1059.

As for Defendants' argument that the Complaint contains inappropriate legal argument, they would not be the first party to refuse to affirm or deny a specific paragraph on the basis that it contains legal argument, and they are free to do so in their answers. The Court does not find legal argument to be so prevalent in the Complaint as to warrant dismissal.

### C. Defendants' Motion to Strike

Defendants argue that portions of the Complaint should be stricken as inflammatory, immaterial, or redundant under Rule 12(f). Dkts. #22 and #44. Consistent with the above findings, the Court disagrees. Defendants have failed to demonstrate that any portion of the Complaint is immaterial, and the references to graphic or lewd behavior are appropriate given the facts that must be pled in a case based on the alleged graphic suffering and death of a mentally-ill detained person. To the extent the Court agrees that portions of certain paragraphs are repetitive, this is not sufficiently distracting or confusing to warrant the unusual relief of striking portions of the Complaint. To order Plaintiffs to amend their Complaint to reduce these few instances of repetition would fail to measurably advance the efficient resolution of this case. The Court will likewise deny Defendants' requests for a more definite statement.

### D. Plaintiffs' Motion to Amend

A "court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2). Courts apply this policy with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). Five factors are commonly used to assess the propriety of granting leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether plaintiff has previously amended the complaint. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990); *Foman v. Davis*,

371 U.S. 178, 182 (1962). In conducting this five-factor analysis, the court must grant all inferences in favor of allowing amendment. *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999). In addition, the court must be mindful of the fact that, for each of these factors, the party opposing amendment has the burden of showing that amendment is not warranted. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987); *see also Richardson v. United States*, 841 F.2d 993, 999 (9th Cir. 1988).

Here, Plaintiffs argue that their proposed First Amended Complaint "corrects typographical mistakes, adds defendants and causes of action, and contains additional factual detail surrounding the arrest and incarceration of Mrs. Rodriguez related to those new defendants." Dkt. #41 at 4. The Motion is unopposed. The Court has reviewed this proposed complaint and finds that the only major additions are to correct the identity of certain Defendants, to add King County and the King County Sheriff's Office as Defendants, to add certain facts and policies related to these new Defendants. There is no evidence of bad faith, undue delay, prejudice, or futility. This is the first amendment by Plaintiffs and it comes before the Court's deadline for doing so. *See* Dkt. #40. Given all of the above, the Court will grant this Motion.

### IV.    CONCLUSION

Having reviewed the relevant pleadings and the remainder of the record, the Court hereby finds and ORDERS that:

1) Defendants' Motions to Dismiss (Dkts. #22 and #44) are DENIED.

2) Plaintiffs' Motion to Amend Complaint (Dkt. #41) is GRANTED. The caption in this case shall be amended as indicated in Plaintiffs' Proposed First Amended Complaint, Dkt #42 Ex. A. Plaintiffs are directed to file a clean copy of the

//

3) Proposed First Amended Complaint on the docket.

DATED this 12th day of March 2020.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE