UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RUSSEL H. DAWSON, Personal Representative of the Estate of Damaris Rodriguez, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SOUTH CORRECTIONAL ENTITY ("SCORE"), a Governmental Administrative Agency, et al., <br><br> Defendants. | CASE NO. C19-1987RSM <br><br> ORDER GRANTING MOTION FOR PROTECTIVE ORDER AND DENYING CROSS-MOTION TO COMPEL |

This matter comes before the Court on Plaintiffs' Motion for Protective Order as to certain medical records, and Defendants' Cross-motion to Compel the same records. Dkts. #91 and #94. The Court has determined that the parties have satisfied LCR 37's meet and confer requirement and that oral argument is unnecessary.

Plaintiffs in this case are Russel Dawson, personal representative of the estate of Damaris Rodriguez, Ms. Rodriguez's husband Reynaldo Gil, and their children. Dkt. #49. Defendants are South Correctional Entity Jail ("SCORE"), NaphCare, Inc., and roughly two dozen individuals associated with the jail and/or NaphCare. *Id*.

ORDER GRANTING MOTION FOR PROTECTIVE ORDER AND DENYING CROSS-MOTION TO COMPEL - 1

On December 30, 2017, Ms. Rodriguez had a mental health emergency while at her home in SeaTac. *Id*. Her husband, Reynaldo Gil, called 911 and requested medical assistance. The police arrived and, due to a confrontation of some kind, arrested Ms. Rodriguez.

Ms. Rodriguez was taken directly to SCORE. SCORE's medical personnel were provided by NaphCare, a for-profit, in-custody, medical contractor.

The Amended Complaint alleges that Ms. Rodriguez was severely mistreated at the hospital and denied adequate medical care. The details of this treatment, while central to Plaintiffs' claims, are not central to the instant Motion. Ms. Rodriguez allegedly developed ketoacidosis and died in custody four days later. *Id*. The Amended Complaint seeks damages for wrongful death beneficiaries for "mental and physical emotional distress, anguish, anxiety and loss of Damaris Rodriguez's love, care, comfort, society, and companionship and for services and support..." Dkt. #49 at ¶ 287.

On March 5, 2020, Defendant NaphCare made the following discovery requests:

> INTERROGATORY NO. 2: For each minor plaintiff, please state the following: ...(g) The name and address of each provider, including pediatricians, mental health specialists and counselors, seen in the five years preceding the death of Damaris Rodriguez and in the years since.
>
> REQUEST NO 23: Please produce a copy of all medical and counseling records for each of Damaris Rodriguez's children for the five years prior to her death and for each year since her death.

Dkt. #95 at 6–7. On April 6, 2020, Plaintiffs objected to Interrogatory 2(g) as follows:

> Objection. Plaintiff objects to subsection "g" because the medical records of decedents children are not reasonably related to any claim or defense. Plaintiff further objects to subsection "g" based on the physician-patient privilege and the mental health counselor/clinical social worker/family therapist privilege…

*Id*. at 12. Plaintiffs responded to Request No. 23 as follows:

ORDER GRANTING MOTION FOR PROTECTIVE ORDER AND DENYING CROSS-MOTION TO COMPEL - 2

> Plaintiff objects to RFP No. 23 because the medical records of the decedent's children are not reasonably related to any claim or defense. Plaintiff further objects to RFP No. 23 based on the physician-patient privilege and the mental health counselor/clinical social worker/family therapist privilege.

*Id.* at 17. The parties have brought the instant Motions for the Court to determine whether Defendants get these records.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Information within this scope of discovery need not be admissible in evidence to be discoverable. *Id*. "District courts have broad discretion in determining relevancy for discovery purposes." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). If requested discovery is not answered, the requesting party may move for an order compelling such discovery. Fed. R. Civ. P. 37(a)(1). The party that resists discovery has the burden to show why the discovery request should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

"A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending…" Fed. R. Civ. P. 26(c)(1). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense…" *Id*. "The decision to issue a protective order rests within the sound discretion of the trial court." *Seiter v. Yokohama Tire Corp.*, 2009 WL 2461000, *1 (W.D. Wash. 2009).

Because NaphCare has requested *all* of the children's medical records for the last five years and going forward, there are two types of records at issue: "pure" medical records, and psychological/psychiatric records. Any medical records involving physical conditions tied to emotional distress or mental health are considered psychological or psychiatric records for the purposes of this motion. *See Equal Employment Opportunity Comm'n v. Big Five Corp.*, No. C17-1098RSM, 2018 WL 2317613, at *3 (W.D. Wash. May 22, 2018). All the remaining records are considered "pure" medical records. *Id.* With respect to "pure" medical records, Plaintiffs have not requested any damages for bodily injury. *See* Dkt. #1 at 50. For that reason, "pure" medical records are irrelevant and not subject to discovery. This leaves the remaining issue of the children's psychological/psychiatric records.

NaphCare contends that the children's mental condition will be an issue at trial because Plaintiffs have disclosed anticipated trial testimony with "severe" emotional distress extending "far beyond 'garden variety damages.'" Dkt. #94 at 2. NaphCare points to four exhibits of "anticipated testimony" from the children's teachers—lay witnesses—with observations like "[s]he separated herself from the rest of the class and became extremely shy," "[h]e is easily distracted and appears to be medicating himself with video/computer games," and across-the-board declines in academic performance after the death of the children's mother. *See id.* at 6–7 (citing Dkt. #95). NaphCare argues that Plaintiffs have thus waived any applicable privilege. *Id.* at 2.

Plaintiffs say they are pursuing mere "garden variety" emotional distress, which does not waive the physician-patient privilege under applicable federal law. Dkt #91 at 6. They seek non-medical emotional harm damages related to stress, loss of enjoyment of life, humiliation, fear, anxiety, and anguish/grief as a result of the death of their mother. *Id.* Plaintiffs state the

children will "not seek to use their medical records at trial, and will not seek their medical expenses as damages." *Id.*

Privileged communications are not subject to discovery. Fed. R. Civ. P. 26(b)(1). Confidential communications made to a licensed psychiatrist, psychologist, or social worker during the course of treatment are afforded privilege protection under Fed. R. Evid. 501. *Jaffee v. Redmond,* 518 U.S. 1, 15 (1996). For purposes of this motion, the children's medical and counseling records regarding their emotional state are considered mental health records protected by the physician-patient privilege. *See Equal Employment Opportunity Comm'n*, No. C17-1098RSM, 2018 WL 2317613, at *3 (W.D. Wash. May 22, 2018) (considering medical records involving physical conditions tied to emotional distress/mental health as psychological/psychiatric records); *see also Oleszko v. State Comp. Ins. Fund*, 243 F.3d 1154, 1158 (9th Cir. 2001) (extending the psychotherapist-patient privilege to communications with unlicensed counselors).

When a plaintiff seeks certain emotional distress damages, the psychotherapist-patient privilege may be waived. *See Santelli v. Electro–Motive,* 188 F.R.D. 306, 308 (N.D.Ill.1999). This is because "[f]or each item of damages, whether economic or non-economic, the plaintiff must show that the damage was proximately caused by the defendant's unlawful conduct." *Doe v. City of Chula Vista,* 196 F.R.D. 562, 568 (S.D.Cal.1999). If there is evidence to show that a plaintiff's emotional distress may have been caused by something besides the injury, fairness dictates that the defendant should be permitted access to that evidence. *See id.*

Without Ninth Circuit consensus on waiver of psychotherapist-patient privilege, district courts have adopted different approaches on how to determine whether the patient has waived the privilege. *Carrig v. Kellogg USA Inc.,* Case No. 12–837–RSM, 2013 WL 392715, at * 2 (W.D. Wash. Jan. 30, 2013) (collecting cases and describing alternative approaches). This

Court has previously applied a "middle ground" approach to waiver, finding that a plaintiff waives the privilege by asserting more than "garden-variety" emotional distress. *See id.* at * 3. *See also Ginter v. BNSF Ry. Co.*, No. C13-00224-RSM, 2014 WL 294499, at *3 (W.D. Wash. Jan. 24, 2014).

Courts adopting the middle ground approach to waiver define "garden variety" emotional distress as "ordinary or commonplace," meaning that which is "simple or usual." *Fitzgerald v. Cassil*, 216 F.R.D. 632, 637 (N.D. Cal. 2003) (citing *Ruhlmann v. Ulster County Dep't of Soc. Servs.,* 194 F.R.D. 445, 449 n.6 (N.D.N.Y. 2000)). A plaintiff waives the privilege by alleging more complex distress, including "any specific psychiatric injury or disorder, or unusually severe distress." *Jackson v. Chubb Corp.,* 193 F.R.D. 216 (D.N.J. 2000). The *Jackson* court grounded its logic in Federal Rule of Civil Procedure 35(a), which allows court orders for physical or mental examinations when a party's physical or mental condition is "in controversy." Fed. R. Civ. P. 35(a).

The Court finds that the minor children are only alleging "garden variety" emotional distress. They seek non-medical emotional harm damages related to stress, loss of enjoyment of life, humiliation, embarrassment, fear, anxiety, and anguish/grief as a result of Defendant's conduct. These terms are not medical diagnoses, but merely lay observations of harm that Plaintiffs claim the children experienced as a result of Defendants' alleged actions. *See Rollins v. Traylor Bros.*, No. C14-1414-JCC, 2017 WL 1756576, at *6 (W.D. Wash. May 5, 2017). Although NaphCare presents proposed testimony that the children have struggled in school or seem depressed, these observations were by lay witnesses and do not strike the Court as unusually "severe" given the loss of their mother or otherwise outside the scope of garden variety emotional distress. Plaintiffs have stated they will not seek to use medical testimony or

records at trial and will not seek medical expenses as damages. Given all of the above, the Court will grant the protective order and deny the motion to compel.

Having reviewed the relevant briefing and the remainder of the record, the Court hereby finds and ORDERS that Plaintiffs' Motion for Protective Order, Dkt. #91, is GRANTED and Defendants' Cross-motion to Compel, Dkt. #94, is DENIED. Defendants are prohibited from obtaining the medical records of Jose Marte, A.R, I.R, S.R. and D.R. by discovery request to plaintiffs or through subpoena.

DATED this 20th day of May, 2021.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE