# The AVID Jail Project and SCORE

## Improving Conditions for Inmates with Mental Illness Through Collaboration



August 2016



## INTRODUCTION

Disability Rights Washington (DRW), Washington's protection and advocacy agency, has a history of working collaboratively with jails and prisons to make significant improvements in the lives of inmates with disabilities in Washington State. Most recently, DRW visited every county jail in the state and publicized the widespread challenges facing jail inmates with disabilities.[1] This report explains the ongoing successful collaboration between Disability Rights Washington's AVID Jail Project and South Correctional Entity (SCORE), a jail in South King County, Washington. The cooperative relationship between DRW and SCORE has produced significant positive changes for inmates with disabilities and demonstrates a path forward for all of Washington's jails.

## BACKGROUND

**Above: DRW logo on front door of the downtown Seattle office**

### Disability Rights Washington (DRW)

Each state and territory in the United States has an independent protection and advocacy organization that has a federal mandate to monitor the conditions of people with disabilities in any setting and to advocate to ensure their rights are protected and they are not abused or neglected. DRW is the private, non-profit organization designated as the protection and advocacy agency for Washington State. Given the vast number of people with disabilities incarcerated in Washington, DRW has used its authority to conduct prison and jail-related advocacy for years.

### Amplifying Voices of Inmates with Disabilities (AVID) Jail Project

In January 2014, DRW created the Amplifying Voices of Inmates with Disabilities (AVID), a project focused on addressing disability-related concerns in prisons in Washington State. In early 2015, AVID received additional funding to expand this work into jails in



**Above: DRW attorney Kim Mosolf provides information to an inmate about the AVID Jail Project.**

King County, focusing on inmates with mental illness. The AVID Jail Project uses DRW's access authority to monitor, investigate, and engage in individual and systemic advocacy on behalf of people with mental illness incarcerated at King County Jail and SCORE.

### South Correctional Entity (SCORE)

SCORE is an 802-bed multi-jurisdictional jail located in Des Moines, Washington. SCORE provides jail services for its seven South King County member cities (Auburn, Burien, Des Moines, Federal Way, Renton, SeaTac, and Tukwila) as well as for 37 contract cities and agencies. SCORE houses pre-trial inmates charged with misdemeanors, inmates serving criminal sentences of up to one year, and inmates jailed for violating Department of Corrections community supervision conditions. At the time of the release of this report, SCORE contracted with Correct Care Solutions (CCS) to provide medical and mental health services for inmates.



**Above: South Correctional Entity (SCORE)**

## METHODOLOGY

The AVID Jail Project began regular monitoring and outreach at SCORE in February 2015, visiting the jail approximately once weekly since then. AVID staff regularly tour all parts of the

jail, but focus outreach in the mental health, medical, and segregated housing units. AVID staff meet inmates wherever they are, including medical observation cells and solitary confinement units. AVID staff speak to inmates about conditions of confinement and mental health treatment in the jail. While visiting with inmates, AVID staff provide assistance and information about inmate rights. The AVID Jail Project obtained all of SCORE and CCS's policies and procedures, which provide background on jail operations and improve its assistance to inmates. Inmates are also able to access AVID Jail Project services via mail or collect telephone calls. In the first year of the project, the AVID Jail Project made 53 visits to SCORE and assisted 558 SCORE inmates to help them better advocate for themselves.



**Above: DRW attorney Kim Mosolf talks with an inmate through a cell door.**

The AVID Jail Project also conducts extensive investigations as part of its systemic advocacy on behalf of inmates with mental illness at SCORE. AVID staff obtain inmate records to verify complaints related to mental health care, solitary confinement, and the use of restraints. AVID staff then identifies necessary systemic reform and brings these issues to the jail administration. In its first year, the AVID Jail Project, SCORE, and CCS met four times to discuss the results of the Jail Project's investigations and ways to address and improve conditions at the jail. This collaborative approach and the cooperative engagement of SCORE has resulted in quick and significant positive changes for inmates with mental illness at SCORE without the need for litigation. The AVID Jail Project appreciates the collaboration and cooperation that we have received from SCORE and the support of SCORE's board for the changes that have been implemented. These changes, described below, relate to mental health



**Above: DRW attorney Kayley Bebber takes notes while monitoring SCORE.**

staffing, psychiatric medication, therapeutic programming, and solitary confinement, among other things.

## INVESTIGATIONS AND OUTCOMES

### Mental Health Staffing

Jails must maintain enough staff with sufficient qualifications to deliver timely and adequate mental health services to inmates.[2] Mental health, medical, and custody staffing shortages can negatively impact the quality and quantity of mental health care delivered to inmates.

When the AVID Jail Project's visits to SCORE began, there was a vacancy for a psychiatric provider with prescribing authority. There was also turnover in mental health provider (MHP) staff. AVID staff observed delays in mental health assessments, and delays and disruptions in providing psychiatric medication to inmates.

**Since DRW and SCORE began working together, SCORE has achieved and committed to the following:**

- SCORE has a full-time psychiatric ARNP with prescribing authority on staff.
- SCORE has three licensed mental health counselors as MHPs on staff.
- SCORE created and filled a full-time Mental Health Coordinator position.




**Above: Sign reading "Medical Provider" at SCORE**

- Following these staffing additions, SCORE was able to increase mental health programming and reduce delays in mental health assessments and provision of psychiatric medication.



Above: An inmate at SCORE talks on camera about his experience getting mental health treatment at SCORE.

## Access to Psychiatric Medication

Delays and disruptions in the provision of psychiatric medication can subject inmates to a risk of serious harm, including deterioration in physical and mental health.[3] SCORE's health policies provide that patients should receive currently prescribed medications in a timely fashion after booking, and lay out clear procedures for verifying and/or substituting psychiatric medication. According to SCORE policies, if an inmate is booked into SCORE without a current prescription for psychiatric medication, SCORE will evaluate the inmate for a new prescription.

During the AVID Jail Project's early monitoring and investigations at SCORE, AVID staff observed significant delays in verifying and providing psychiatric medications for many inmates. Notably, some of these inmates had well-established mental health treatment histories but still faced delay and disruption in medication.

**Since DRW and SCORE began working together, SCORE has achieved and committed to the following:**

- SCORE has reduced delays in verifying and providing psychiatric medication to inmates who enter the jail with existing prescriptions. AVID staff consistently hear from inmates that they received their medication within one or two days of incarceration.
- SCORE has reduced wait times to see a psychiatric provider who can evaluate and prescribe an inmate new psychiatric medication.

- AVID staff has seen a significant reduction in inmates reporting discontinuation of their medication due to formulary issues.

### Mental Health Screening and Treatment

Jails must maintain a systematic program for screening and evaluating inmates in order to timely identify those who require mental health treatment.[4] Jails must also treat inmates with mental illness in an individualized manner.[5] The professional standard of care for psychiatric services requires the development of individualized treatment plans for each patient.[6]

Mental health therapy is an essential component of mental health treatment. It is a generally accepted standard of care that psychiatric medication alone is not sufficient for treating people with mental illness.[7] Without mental health therapy services—including out-of-cell programming to address symptoms, reduce isolation, and promote compliance with treatment—inmates with serious mental health conditions are placed at serious risk of deterioration. Clinical assessments and therapy should not be conducted during mental health rounds and cell-front interviews, but instead in a clinical setting with adequate privacy.[8]



**Above: Attorney Kim Mosolf talks with inmates under medical observation in SCORE's medical unit.**

During the AVID Jail Project's initial monitoring at SCORE, AVID staff observed that many inmates did not receive timely mental health screenings. AVID staff also did not see documentation of individualized mental health treatment plans in inmate health records. Finally, during the AVID Jail Project's initial investigation, it appeared that the SCORE mental health system primarily consisted of

psychiatric medication management, weekly MHP rounds in the segregated units, and quick, cell-front assessments. AVID staff did not observe any individual counseling or group therapeutic programming for inmates with mental illness.

**Since DRW and SCORE began working together, SCORE has achieved and committed to the following:**

- SCORE now runs three mental health units that are visited daily by MHPs.
- MHPs lead group therapeutic programming in each of the three mental health units on a daily basis. AVID staff has consistently heard positive feedback about this programming from inmates.
- Inmates in the mental health units are given an opportunity to meet individually with an MHP.
- SCORE continues to improve creation and documentation of individualized treatment plans.
- Clinical encounters with the psychiatric ARNP now frequently occur in confidential settings.

## Use of Solitary Confinement

Correctional facilities like SCORE must refrain from keeping inmates with serious mental illness in conditions of confinement that risk or cause serious harm.[9] Researchers have long agreed that solitary confinement[10] has significant negative effects on individuals, and especially on individuals with mental illness.[11] Many professional groups—including the American Bar Association, the American Psychiatric Association, the Society for Correctional Physicians, and the National Commission on



**Above: An inmate reads in his cell in a segregation unit.**

Correctional Health Care (NCCHC)—recognize this harm and support vastly limiting the use of solitary confinement for those with serious mental illness.[12] The NCCHC, which has accredited SCORE, recommends excluding inmates with mental illness from solitary confinement for any duration.[13]

When the AVID Jail Project began visiting SCORE, it found a significant portion of inmates were kept in solitary confinement. AVID staff routinely encountered inmates in all of the solitary confinement housing units who reported diagnoses of serious mental illness and/or exhibited signs of significant functional impairment.

**Since DRW and SCORE began working together, SCORE has achieved and committed to the following:**

- SCORE has reduced its total solitary confinement housing units from five to three.
- SCORE allows some inmates in the solitary confinement units to have their daily hour out-of-cell with a small group of other inmates.
- SCORE has changed its inmate classification system to reduce the overall number of inmates placed in solitary confinement and to better screen out inmates with mental illness.
- SCORE has significantly increased hours out-of-cell daily for inmates in the mental health units.

## Acute Care and Release Planning

An inmate must have access to acute inpatient-level psychiatric care if necessary during incarceration.[14] Jails that are not able to provide that level of care must facilitate the transfer of inmates in acute psychiatric crisis to inpatient facilities.[15] Similarly, jails should avoid simply releasing inmates in mental health crisis to the street without any



**Above: An inmate talks with AVID Jail staff in the programming area at SCORE .**

assistance, especially those found by the criminal court to be not competent to stand trial due to mental illness.

When AVID staff began visiting SCORE, they observed inmates who appeared to have serious mental illness detained in solitary confinement without access to more acute care. Often, these inmates did not receive any significant release planning and were released to the street.

**Since DRW and SCORE began working together, SCORE has achieved and committed to the following:**

- SCORE is making more active efforts to identify and transfer inmates in acute psychiatric crisis to inpatient facilities.
- SCORE participates in a program to house a mental health evaluator at the jail to perform court-ordered competency evaluations more quickly, thereby reducing delay for inmates who may qualify for inpatient treatment.
- SCORE provides more intensive release planning for inmates in the mental health housing units and continues to formalize and expand this service.
- SCORE has a staff member trained to assist inmates in securing health insurance through the Affordable Care Act before release.
- SCORE is working with local community mental health providers for coordination and continuity of care.



**Above: A rack of restraint cuffs at SCORE**

## Discipline

Jails and prisons often punish inmate behavior that is the result of symptoms of mental illness.[16] Some even punish inmates explicitly for acts of self-harm, including suicide attempts.[17] Using punishment such as solitary confinement as a response to symptoms of mental illness is unlawful and may serve only to exacerbate the symptoms.[18] Jails and prisons should require an independent assessment of whether symptoms of serious mental illness contributed to the behavior at issue in an effort to provide treatment instead of punishment.



**Above: An empty cell in a segregation unit**

When the AVID Jail Project began visiting SCORE, it found many instances of discipline for behaviors that seemed related to symptoms of serious mental illness. SCORE often did not follow its own policy that required the jail to assess whether symptoms of mental illness contributed to the behavior at issue before imposing punishment. In addition, AVID staff found several instances in which SCORE charged inmates with major disciplinary infractions for acts of self-harm.

**Since DRW and SCORE began working together, SCORE has achieved and committed to the following:**

- SCORE has revised its process to ensure that all disciplinary reports are reviewed by mental health staff to assess whether the inmate's mental health played a role in the behavior at issue before imposing discipline.
- SCORE implemented a policy to ensure that disciplinary action does not prevent an inmate from accessing mental health programming.
- SCORE has changed its practice to eliminate infractions for self-harm for inmates with serious mental health issues.
- SCORE is providing Crisis Intervention Training to all staff over the course of the next two years to help ensure that officers are better able to respond appropriately to inmate behaviors related to mental illness.

**MOVING FORWARD**

Both SCORE and DRW recognize that there is a growing number of individuals in jails with mental illness and that these individuals would often be better served in a therapeutic setting. Due largely to a lack of resources for community-based mental health treatment, jails have become society's de facto mental health care facilities. Until this changes, jails are forced to contend with the challenges of providing appropriate treatment and conditions of confinement for large numbers of people with mental illness. This is no small task.

At the time of publication of this report, SCORE and DRW have been working collaboratively for approximately 20 months. SCORE has committed to making numerous positive changes to policy and practice related to inmates with mental illness. The organizations wish to continue collaborating and building on the successes outlined in this report. To that end, SCORE and DRW have entered into a Memorandum of Collaboration (Attachment A) outlining achievable and reasonable goals. SCORE and DRW are dedicated to improving conditions for people with mental illness in SCORE's custody.



**Above: DRW attorneys Kayley Bebber (left) and Kim Mosolf (right) walk down a hallway with SCORE staff.**

For more information on the AVID Jail Project, please visit our website at **avidjailproject.org**, call us at **(206) 324-1521**, or write to us at:

**Disability Rights Washington**
**315 Fifth Avenue South, Suite 850**
**Seattle WA 98104**

---

[1] Disability Rights Washington, *County Jails, Statewide Problems: A Look at How Our Friends, Family, and Neighbors with Disabilities are Treated in Washington's Jails* (2016), http://www.disabilityrightswa.org/county-jails-statewide-problems.

[2] *Coleman v. Wilson*, 912 F. Supp. 1282, 1306 (E.D. Cal. 1995) (quoting *Balla v. Idaho Dep't of Corr.*, 595 F. Supp. 1558, 1577 (D. Idaho 1984)).

[3] *Hernandez v. Cty. of Monterey*, 110 F. Supp. 3d 929, 953 (N.D. Cal. 2015); *Steele v. Shah*, 87 F.3d 1266, 1269-70 (11th Cir. 1996). R.H. Howland, *Potential adverse effects of discontinuing psychotropic drugs* [a four-part series], 48 J. Psychosoc. Nurs. Ment. Health Serv. (2010).

[4] *Coleman,* 912 F. Supp. at 1305; *Graves v. Arpaio*, 48 F. Supp. 3d 1318, 1342 (D. Ariz. 2014).

[5] *Coleman*, 912 F. Supp. at 1306 (*quoting Balla,* 595 F. Supp. at 1577).

[6] American Psychiatric Association, *Clinical Practice Guidelines*, https://www.psychiatry.org/psychiatrists/practice/clinical-practice-guidelines. The APA has developed and published clinical practice guidelines addressing numerous psychiatric conditions, including Bipolar Disorder, Major Depressive Disorder, and Schizophrenia. These guidelines include recommendation and discussion of "Formulation and Implementation of a Treatment Plan."

[7] *Id.*

[8] Institute of Medicine (U.S.) Committee on Health Research and the Privacy of Health Information, *Beyond the HIPAA Privacy Rule: Enhancing Privacy, Improving Health through Research* (Nass SJ, Levit LA, Gostin LO, eds., 2009); National Commission on Correctional Health Care, *Position Statement: Solitary Confinement (Isolation)* (2015), Principle 13, http://www.ncchc.org/solitary-confinement.

[9] *Madrid v. Gomez,* 889 F.Supp. 1146, 1261-1267 (N.D. Cal. 1995); *Coleman*, 912 F. Supp. 1282.

[10] United States Department of Justice, *Report and Recommendations Concerning the Use of Restrictive Housing*, 3 (2016) https://www.justice.gov/dag/file/815551/download.

[11] For a review of current studies into the effects of solitary confinement on inmates, *see* Vera Institute of Justice, *Solitary Confinement: Common Misconceptions and Emerging Safe Alternatives*, 17-18 (2015), http://www.vera.org/sites/default/files/resources/downloads/solitary-confinement-misconceptions-safe-alternatives-report_1.pdf.

[12] American Bar Association, *ABA Standards for Criminal Justice: Treatment of Prisoners,* 55 (2011), http://www.americanbar.org/content/dam/aba/publications/criminal_justice_standards/Treatment_of_Prisoners.authcheckdam.pdf; American Psychiatric Association, *Position Statement on Segregation of Prisoners with Mental Illness* (2012), https://www.psychiatry.org/home/policy-finder; The Society of Correctional Physicians, *Restricted Housing of Mentally Ill Inmates* (2013), http://societyofcorrectionalphysicians.org/resources/position-statements/restricted-housing-of-mentally-ill-inmates.

[13] National Commission on Correctional Health Care, *Position Statement: Solitary Confinement (Isolation)* (2015), http://www.ncchc.org/solitary-confinement.

[14] *Graves*, 48 F. Supp. 3d at 1352; United States Department of Justice, National Institute of Corrections, *Effective Prison Mental Health Services: Guidelines to Expand and Improve Treatment*, 30-31, (2004), https://s3.amazonaws.com/static.nicic.gov/Library/018604.pdf.

[15] *Id*.

[16] Jamie Fellner, *A Corrections Quandary: Mental Illness and Prison Rules*, 41 Harv. C.R.-C.L. L. Rev. 391 (2006).

[17] *Id*.

[18] *Id*. *See also Graves*, 48 F. Supp. 3d at 1354.

# ATTACHMENT A

**Memorandum Regarding Ongoing Collaboration Between South Correctional Entity and Disability Rights Washington**

South Correctional Entity (SCORE) has been working collaboratively with Disability Rights Washington (DRW) over the past 20 months. Both organizations recognize that there is a growing percentage of individuals in jails who have disabilities, often related to mental illness. While many of these individuals would benefit from community programs, a lack of community resources has resulted in many of them being diverted to jail for minor criminal offenses. SCORE recognizes that a traditional jail environment is not optimal for those inmates with mental illness and, to that end, SCORE has worked with DRW to identify operational practices that improve the conditions for inmates with disabilities who are confined in jail.

During the course of its collaboration with DRW, SCORE has, among other things, substantially increased correctional and medical staffing, increased medical and dental resources, increased sick call hours, designated three mental health units, conducted daily mental health groups in the mental health units, enhanced jail policies, revised classification processes, increased logging and documentation, welcomed new community partners, and sponsored crisis intervention training for staff.

SCORE and DRW wish to continue collaborating and building on the above, and believe that the items listed below are reasonable, achievable, and will continue to improve outcomes for adults in custody with mental illness.

1. SCORE will make good faith efforts to hire and retain sufficient mental health and custody staff to achieve the outcomes set forth in this Collaboration Memorandum.

2. SCORE will continue to make good faith efforts to explore alternatives to, and reduce the number of inmates with disabilities that are housed within, restricted housing units. These efforts are expected to include adding small group hours out for inmates in restrictive housing to the extent possible, reviewing recreation options for inmates held in medical housing, and adding an additional Mental Health Provider (MHP) with an addiction specialty, which will allow further increases in programming options.

3. SCORE will continue to expand designated mental health housing to include a minimum of two male housing units and one female housing unit (which could have mixed classification inmates).

   a. Inmates within the mental health housing units will have access to at least four hours of time out of their cells on a daily basis. Time out of their cells includes unstructured time for physical exercise, meals, phone calls, and hygiene needs. Although this time frame is not binding, SCORE's goal is to have four hours out for all mental health housing units during the 2017 calendar year.

   b. When feasible, inmates within the mental health housing units will have access to mental health programming on a daily basis Monday-Friday. The goal is to have access to at

least one hour of programming daily Monday-Friday.

c. Inmates within the "step-down" mental health unit will have clearly identifiable steps that allow for the transition to the less restrictive mental health unit. It is anticipated the step-down unit will receive the same amount of group programming as the less restrictive mental health unit. The step-down unit may, however, have less out-of-cell time than the less restrictive unit. Out-of-cell time will be in small groups unless there is a safety and security reason to restrict a specific inmate to single time out. If this occurs, the reason will be documented in the inmate's record.

4. Inmates with mental illness will have an individualized treatment plan that includes, when possible, reentry planning and assistance with health insurance enrollment under the Affordable Care Act, and recognizes SCORE's legal obligation to release inmates when ordered to do so by the court without advance notice. Inmates that are on the mental health case load will receive an individualized mental health treatment plan. The plan includes goals that will provide a path for transition to a less restrictive unit. Inmates that are not on the mental health caseload will not receive an individualized mental health treatment plan.

5. Inmates with mental illness will have reasonable access to a provider with prescriptive authority, as appropriate.

6. SCORE will continue to monitor its disciplinary infraction process to avoid punishing behaviors and actions resulting from symptoms of mental illness.

a. When an inmate resides in mental health housing, or is known by staff to have mental illness, custody staff will consult with mental health staff to determine whether an inmate had capacity to control and/or understand the behavior or action at issue before imposing a disciplinary sanction.

b. If an inmate has a serious mental health issue SCORE will not impose disciplinary sanction for inmate self-harm.

c. SCORE will make reasonable efforts to ensure that any sanction imposed will not prevent an inmate from receiving their regular mental health programming and/or treatment.

7. SCORE has developed a Crisis Intervention Training (CIT) program that is to be adopted by the Criminal Justice Training Commission. The curriculum was taught to all SCORE corrections officers in March and April of 2016. SCORE will incorporate CIT in the new officer orientation program.

8. SCORE will continue to work with CDMHPs on the assessment of those inmates that meet the criteria for involuntary commitment under chapter 71.05 RCW.

9. SCORE will work with its medical vendor so that the vendor may provide bridging doses of medication to inmates in addition to written prescriptions at release, where appropriate.

10. SCORE will implement and track data that demonstrates compliance with the terms of the Collaboration Memorandum.

11. SCORE will meet periodically with DRW to discuss tracking of data as well as the outcomes listed in the Collaboration Memorandum.

SCORE is committed to ongoing good faith efforts to continue accomplishing these goals and to achieving positive results for inmates. This memorandum, however, is not intended as an acknowledgment or reflection of what may be required of SCORE or other similar facilities by state or federal law, nor does it represent a formal policy, procedure or guideline. This memorandum shall not be enforceable in court and does not constitute a decree, contract or other enforceable promise by either party hereto.

Signed by [signature] of SCORE, on this 24, August day of 2016.

Signed by [signature] of DRW, on this 24th August day of 2016.

[signature] DRW 24th day of August, 2016.