The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

RUSSELL H. DAWSON,

Plaintiff,

vs.

NAPHCARE, et al;

Defendants.

NO. 2:19-cv-01987

PLAINTIFF'S AMENDED OPPOSITION TO THE NAPHCARE DEFENDANTS' MOTIONS IN LIMINE

NOTE ON MOTION CALENDAR: JANUARY 21, 2022

Upon receipt of Defendants' motion to strike, Plaintiff immediately submitted this amended opposition brief that is eighteen pages in length, counted pursuant to LCR 7(e)(6). Plaintiff asks that this Opposition be substituted for Dkt #230. As an explanation but not an excuse for their mistake: Plaintiff's counsel improperly read rule 7(e)(5) to allow an eighteen-page opposition to each singular motion in limine. Plaintiff's counsel acknowledges that when read together with rule 7(d), their initial interpretation of rule 7(e)(5) is incorrect. Substituting this amended/shortened brief will not cause prejudice to Defendants because a reply is not allowed in support of their motions in limine.

## I.      EVIDENCE RELIED UPON

Plaintiff relies upon the declaration of J. Nathan Bingham and court file.

## II.      RESPONSES

PLAINTIFF'S AMENDED OPPOSITION TO THE
NAPHCARE DEFENDANTS' MOTIONS *IN LIMINE* - 1
2:19-cv-01987-RSM

**General MIL 1.    Exclusion of Surveillance Video and Deposition Video Clips in Opening Statement.**

Defendants' MIL 1 addresses two separate issues: (A) surveillance video and (B) video depositions. Plaintiff does not intend to show clips from video depositions in opening and therefore does not oppose that portion of the motion. Plaintiff does intend to show a limited number of surveillance video clips in opening. Plaintiff should be allowed to show exhibits for which authenticity is admitted and there is no genuine dispute about admissibility.

Contrary to Defendants' brief, authenticity of the videos is admitted, as indicated in the proposed pretrial order, Dkt.227. Further, Plaintiff only intends to show videos that are admissible. In particular, Plaintiff intends to show video clips showing the layout of the area in and around Damaris's cells and also show clips of when NaphCare personnel observed Damaris in obvious physical distress. One of the primary factual issues that the jury will need to resolve is whether or not NaphCare personnel ignored Damaris in a serious medical condition. The video showing what NaphCare personnel saw and observed will be at the heart of this dispute. *See also* Plaintiff's response to General MIL 11, in which the admissibility of the videos is discussed in more detail.

**General MIL 2.   Prohibit Plaintiff from Employing "Reptile" Tactics.**

A.  Defendants' "reptile" motion in limine is improper and should be denied

Defendants' motion to preclude "reptile" tactics is not a proper motion in limine; does not address any specific evidence; is overly broad, undefined and ambiguous; and improperly requests broad prior restraint on Plaintiff's trial strategy and presentation without justification.

Federal district courts have rejected motions in limine to preclude "reptile" tactics as improper for a multitude of reasons that are all present here. *See, e.g., Baxter v. Anderson*, 277 F. Supp. 3d 860, 863 (M.D. La. 2017) (Finding that the "reptile" motion did not give the Court any objective language to consider, and was simply complaining about "amorphous and ill-defined

PLAINTIFF'S AMENDED OPPOSITION TO THE NAPHCARE DEFENDANTS' MOTIONS *IN LIMINE* - 2
2:19-cv-01987-RSM

1   concepts rather than specific evidence."); *Gannon v. Menard, Inc.*, No. 118CV00251JMSMJD,

2   2019 WL 7584294, at *4–5 (S.D. Ind. Aug. 26, 2019); *Manion v. Ameri-Can Freight Sys. Inc.*,

3   2019 WL 3718951, at *6-7 (D. Ariz. Aug. 7, 2019); *Walden v. Md. Casualty Co.*, 2018 WL

4   6445549, *3 (D. Mont. 2018); *Dorman v. Anne Arundel Med. Ctr.*, 2018 WL 2431859, *6 (D. Md.

5   2018).

6       Defendants' "reptile" motion should be denied for the additional reason that it improperly

7   vilifies the Plaintiff and his attorneys with justification. Defendants essentially request, as a

8   "motion in limine," issuance of a prior restraint on Plaintiff's trial strategy and presentation, which

9   are of course assumed to be improper. *See, e.g., Moses Enterprises, LLC v. Lexington Ins. Co.*, No.

10  CV 3:19-0477, 2021 WL 5414118, at *3–4 (S.D.W. Va. May 27, 2021) (There is no indication

11  that Plaintiff's expert will testify beyond what was disclosed, that Plaintiff plans to admit

12  undisclosed evidence, or that Plaintiff intends to engage in 'reptile tactics.'…Court will not issue

13  an advisory opinion about abstract improper conduct.") (emphasis in original).

14      B.   Defendants use the "reptile" motion to advance a patently erroneous legal argument
           regarding the standard of care under RCW 7.70.040(1) and to otherwise erroneously
           assert that considerations of safety are irrelevant to any issues in this case

18      Defendants use their "reptile" motion in limine to suggest that considerations of safety can

19  have nothing to do with this case and should be kept out. Defendants hinge their argument that

20  "safety" must be excluded from trial on the contention that the only relevant legal standard in this

21  trial is Washington's healthcare malpractice statute, RCW 7.70.040(1), which is a standard that is

22  defined solely by the healthcare profession and does not also include "the expectations of society."

23  Defendants' contention is incorrect in two respects. First, defendants misstate Washington law

24  with respect to RCW 7.70.040(1). It is actually well-settled in Washington that "*both* the medical

25  profession and society play a role in establishing what is expected of a medical provider." *Adair*

PLAINTIFF'S AMENDED OPPOSITION TO THE
NAPHCARE DEFENDANTS' MOTIONS *IN LIMINE* - 3
2:19-cv-01987-RSM

**KRUTCH LINDELL BINGHAM JONES, P.S.**
3316 Fuhrman Ave. E
Suite 250
Seattle, Washington 98102
TEL. 206.682.1505 • FAX 206.467.1823

*v. Weinberg*, 79 Wn. App. 197, 203, 901 P.2d 340, 343 (1995) (emphasis in original);[1] *Bauer v. White*, 95 Wn. App. 663, 668, 976 P.2d 664 (1999) (The standard is not limited to the standard practiced by those in the profession…This is because it is society and the patients to whom physicians are responsible, not their fellow practitioners.")   Considerations of safety are therefore not irrelevant or subject to blanket exclusion. Second, RCW 7.70.040 is not the only relevant legal standard as defendants claim because Plaintiff has constitutional "deliberate indifference" claims against the individual defendants and *Monell* claims against NaphCare—which survived NaphCare's motion for summary judgment against them—and considerations of safety are certainly relevant to these claims. Considerations of safety are certainly important to adjudication of such claims requiring the "substantial risk of serious harm," as Plaintiff must prove under *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124-1125 (9th Cir. 2018).

**General MIL 3.   Prohibit Argument or Testimony that Failing to Follow a Policy Manual Establishes Negligence or a Constitutional Violation.**

The "title" of defendants' motion is at odds with the relief they actually request at the end of their argument (p. 4), which is to exclude any testimony or evidence regarding NaphCare internal policies or procedures. To the extent Defendants' MIL seeks to prohibit argument, there is no dispute that failure to follow NaphCare internal policies or procedures does not conclusively *establish* negligence or a constitutional violation as a matter of law, or negligence per se.

To the extent Defendants' MIL actually seeks to exclude testimony or evidence regarding NaphCare policies and procedures, it should be denied. RCW 5.40.050 makes clear that a breach

---

[1] Defendants ignore this controlling Washington Supreme Court precedent, and instead cite to the Washington Court of Appeals' decision in *Adair*, *supra*, as purportedly standing for the proposition that society plays no role in determining the standard of care. Defendants misstate the holding of *Adair*, which is actually the opposite of their contention here and confirms *Harris* and *Watson* that expectations of society are relevant to the standard of care. In addition to incorrectly describing its holding.

PLAINTIFF'S AMENDED OPPOSITION TO THE
NAPHCARE DEFENDANTS' MOTIONS *IN LIMINE* - 4
2:19-cv-01987-RSM

**KRUTCH LINDELL BINGHAM JONES, P.S.**
3316 Fuhrman Ave. E
Suite 250
Seattle, Washington 98102
TEL. 206.682.1505 • FAX 206.467.1823

of a duty imposed by statute, ordinance, or administrative rule does not establish negligence per se, but it also explicitly states that such a breach "may be considered by the trier of fact as evidence of negligence." Though a private organization's internal policies, rules, and procedures are not statutes, ordinances, or administrative rules, and thus fall outside of RCW 5.40.050, the case law makes clear that they may "provide evidence of the standard of care and therefore evidence of negligence." *Joyce v. State, Dep't of Corr.*, 155 Wn. 2d 306, 324, 119 P.3d 825 (2005). *See also Garrison v. Sagepoint Fin., Inc.*, 185 Wn. App. 461, 501 n. 26, 345 P.3d 792 (2015) ("AIG's internal manual is evidence of the standard of care."); *Egede-Nissen v. Crystal Mountain, Inc.*, 21 Wn. App. 130, 142, 584 P.2d 432, 440 (1978), *aff'd and modified*, 93 Wn. 2d 127, 606 P.2d 1214 (1980). Healthcare malpractice cases are no exception. In *Adcox v. Children's Orthopedic Hosp. & Med. Ctr.*, 123 Wn. 2d 15, 37–38, 864 P.2d 921 (1993), the Washington Supreme Court rejected a defendant hospital's challenge to a jury instruction that stated "a hospital's nursing staff 'is obligated' to follow hospital rules and policies, and violation of rules or policies, while not necessarily constituting negligence, could be considered in determining negligence." *See also Poletti v. Overlake Hosp. Med. Ctr.*, 175 Wn. App. 828, 837–39, 303 P.3d 1079 (2013) (stating that the plaintiff "is free to argue… a breach of the standard of care established by the hospital's own policy"); *Van Hook v. And*erson, 64 Wn. App. 353, 356-57, 824 P.2d 509 (1992). Courts in other jurisdictions have also held that a healthcare organization's internal rules and procedures can be used as evidence of the standard of care in healthcare malpractice cases. *See*, *e.g.*, *Marks v. Mandel*, 477 So. 2d 1036, 1038–39 (Fla. Dist. Ct. App. 1985; *Moyer v. Reynolds*, 780 So. 2d 205, 208–09 (Fla. Dist. Ct. App. 2001); *Pickle v. Curns*, 106 Ill. App. 3d 734, 740, 435 N.E.2d 877, 882 (1982); *Quijano v. United States*, 325 F.3d 564, 567–68 (5th Cir. 2003).

**KRUTCH LINDELL BINGHAM JONES, P.S.**
3316 Fuhrman Ave. E
Suite 250
Seattle, Washington 98102
TEL. 206.682.1505 • FAX 206.467.1823

And contrary to Defendants' contention, NaphCare's internal procedures and policies are not irrelevant to Plaintiff's constitutional claims against the individual defendants. *See, e.g., Bevan v. Valencia*, No. CV 15-0073 KG/SCY, 2018 WL 4208065, at *2 (D.N.M. Sept. 4, 2018) ("…Plaintiff can present the policy and the policy violation by the individual, then argue deliberate indifference."); *Carrier v. Cty. of Los Angeles*, No. CV 17-7231 MRW, 2019 WL 8161143, at *3 (C.D. Cal. Dec. 23, 2019) ("An agency's internal guidelines and policies may place an officer "on notice that he might be liable" for violating a person's established rights. *Groh v. Ramirez*, 540 U.S. 551, 564, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004)."); *Tafoya v. Salazar*, 516 F.3d 912, 919 (10th Cir. 2008); *Goka v. Bobbitt*, 862 F.2d 646, 652 (7th Cir. 1988).

Here, NaphCare policy is squarely at issue with respect to Plaintiff's constitutional claims against NaphCare under *Monell*, as the Court recognized in Dkt. 197 at 11. *See also Id.* at 4 ("evidence that NaphCare was on notice of the dangers of its intake policy…raises a genuine dispute of material fact.").

### General MIL 4.   Exclude Any NCCHC Audit or Similar Report.

The 2016 Report issued by Disability Rights Washington, entitled *The AVID Jail Project and Score: Improving Conditions for Inmates with Mental Illness Through Collaboration* ("the AVID Report") is relevant evidence that NaphCare was on notice of dangers in its policies.

For a statement to constitute "hearsay" under the Federal Rules of Evidence, it must be "a statement that… a party offers in evidence to prove the truth of the matter asserted in the statement." FRE 801(c). The AVID Report is evidence of notice to NaphCare of danger. As such, it is not offered as evidence of the truth of the matter asserted and does not constitute hearsay. *Calmat Co. v. U.S. Dep't of Lab.*, 364 F.3d 1117, 1124 (9th Cir. 2004) (holding that an out of court

PLAINTIFF'S AMENDED OPPOSITION TO THE
NAPHCARE DEFENDANTS' MOTIONS *IN LIMINE* - 6
2:19-cv-01987-RSM

**KRUTCH LINDELL BINGHAM JONES, P.S.**
3316 Fuhrman Ave. E
Suite 250
Seattle, Washington 98102
TEL. 206.682.1505 • FAX 206.467.1823

1  statement was not hearsay when admitted as evidence that employee's supervisors were aware that

2  the employee had been threatened).

3      There is evidence that Defendant Nancy Whitney—who was NaphCare's Director of

4  Mental Health at the time of Damaris's death—and NaphCare knew of the AVID Report's

5  findings. Defendant Whitney testified that she was aware of the collaboration project between

6  Disability Rights Washington and SCORE that ultimately resulted in production of the AVID

7  Report, and that the report was provided to her to help guide her in developing the mental health

8  program. Dkt. 178-14 at 141:16-142:15. The AVID Report is therefore relevant and not

9

10  inadmissible hearsay.

11      The AVID report should also not be excluded for lack of authenticity. First, Defendant

12  Whitney testified that she read the report. Second, Defendants seem to agree that the AVID Report

13  was issued by Disability Rights Washington and that www.disabilityrightswa.org is the website of

14  Disability Rights Washington. Dkt. 222, Defendants' Motions in Limine, p. 5 and fn. 3. There is

15  no basis to challenge the authenticity of the AVID Report based on the present record, or a basis

16  for an order precluding Plaintiff from further establishing its authenticity at trial if necessary.

17

18      The NCCHC reports predate Damaris's incarceration and also flag for NaphCare a number

19  of potential issues in their operating procedures. If NaphCare takes the position that it had no way

20  of knowing that its policy deficiencies could lead to inadequate healthcare, the NCCHC reports

21  will be highly relevant that NaphCare's management was on notice. Plaintiff has reason to believe

22  that NaphCare will make these arguments at trial because this is exactly what their 30(b)(6) witness

23  attempted to do when he implied it was metaphysically impossible for someone to have conceived

24  of a policy that would have saved Damaris's life by sending her to an emergency room, rather than

25

26  leaving her in solitary confinement without being medically screened. Bingham Decl., Exh. A,

27

**KRUTCH LINDELL BINGHAM JONES, P.S.**
3316 Fuhrman Ave. E
Suite 250
Seattle, Washington 98102
TEL. 206.682.1505 • FAX 206.467.1823

Wade dep. at 87:4-90:19. If NaphCare is going to argue that it was impossible for the human mind to contemplate certain policy deficiencies, then Plaintiff should have the opportunity to prove that the human minds in charge of NaphCare were advised of these policy deficiencies shortly before Damaris's death.

There are a number of different ways Plaintiff may be able to authenticate the NCCHC documents at trial. NaphCare argues there is nobody to testify about these documents because Plaintiff's experts did not opine on them, but this argument ignores that Plaintiff may authenticate these documents via NaphCare's employees. For example, HSA Rebecca Villacorta wrote a letter summarizing and enclosing the report shortly before Damaris's incarceration began, so presumably she will be able to authenticate the report. Bingham Decl., Exh. B.

**General MIL 5.   Exclude Reference to or Evidence of Other Inmate Deaths or Incidents, as well as Claims or Lawsuits Brought Against NaphCare.**

Defendants' MIL 5 attempts to preclude other incidents and requests a blanket exclusion of reference to any evidence of other inmate deaths or incidents, or claims/lawsuits brought against NaphCare, but fails to identify any specific other incidents defendants seek to exclude. Defendants themselves acknowledge in their motion precedent establishing that "similar acts" evidence can be admissible when it is probative of a material issue other than character. Dkt. 222 at 7:5-6. Therefore, a blanket exclusion of "other incidents" in general is not appropriate. Defendants' failure to identify any particular incidents they seek to exclude and the specific reason(s) they should be excluded is fatal to their motion, which should accordingly be denied. Moreover, other incidents are directly relevant to the question of whether a municipal defendant has a policy of deliberate indifference for purposes of *Monell* liability. *Henry v. Cty. of Shasta*, 132 F.3d 512, 517–19 (9th Cir. 1997), *opinion amended on denial of reh'g*, 137 F.3d 1372 (9th Cir. 1998).

**KRUTCH LINDELL BINGHAM JONES, P.S.**
3316 Fuhrman Ave. E
Suite 250
Seattle, Washington 98102
TEL. 206.682.1505 • FAX 206.467.1823

**General MIL 6.   Prohibit Argument or Evidence that NaphCare is Liable for the Negligent Hiring, Training and Supervision of its Employees.**

Defendants ignore the fact that Plaintiff brings both tort claims and §1983 claims. Defendants admit in their Response to Plaintiffs' Motion for Partial Summary Judgment "the policy and training claims are relevant to Plaintiffs' Section 1983 claims…" *Id.* at 10:2. They admit the same in a footnote to their motions. Dkt. 222 p. 9 fn. 8. And, of course, evidence of NaphCare's policies, training, and supervision is indeed relevant to Plaintiff's *Monell* claims against NaphCare.

Further, even Defendants' tort arguments are based on a faulty premise. NaphCare's argument that there is no separate cause of action for negligent training and supervision where the employees were acting within the scope of their employment is inapplicable in the healthcare negligence context. There are four primary duties owed by a hospital under the doctrine of corporate negligence—one of which is "to select its employees with reasonable care" and another of which is "to supervise all persons who practice medicine within its walls." (Dkt. 153, pp. 12-13 (citing *Douglas v. Freeman*, 117 Wn.2d 242, 814 P.2d 1160 (1991)). The healthcare corporate negligence claims may survive even if the individual defendants are not negligent: "a hospital can be held liable for its own negligence in the absence of any negligence on the part of the treating physician." *Id*. at 252. The Court further explained that liability for corporate negligence does not depend on vicarious liability under the theory of respondeat superior for healthcare malpractice, as "these are different theories of liability based on different standards of care." *Id.* at 253.

Further, even if the *LaPlant* line of cases were applicable in the healthcare malpractice context, it would not be appropriate while there are outstanding issues on the allocation of fault. Plaintiff believes NaphCare's comparative fault arguments are legally and factually frivolous, but where the jury could theoretically be tasked with allocating percentages of fault, Plaintiff is entitled to present all evidence of negligence by any defendant. *Quynn v. Hulsey*, 310 GA 473, 479, 850

PLAINTIFF'S AMENDED OPPOSITION TO THE NAPHCARE DEFENDANTS' MOTIONS *IN LIMINE* - 9
2:19-cv-01987-RSM

**KRUTCH LINDELL BINGHAM JONES, P.S.**
3316 Fuhrman Ave. E
Suite 250
Seattle, Washington 98102
TEL. 206.682.1505 • FAX 206.467.1823

S.E.2d 725, 2020 ("claims that an employer was negligent are divisible from claims that its

employee was negligent, and so are capable of being assigned percentages of fault.").

**General MIL 7.   Exclude Testimony or Argument that the NaphCare Defendants are Liable for Not Contacting Damaris Rodriguez's Family After She was Arrested.**

In the first paragraph of MIL 7, Defendants move to exclude argument that Defendants

*were legally liable* for not notifying Damaris's family about her condition. Plaintiff does not

oppose this motion as written. Plaintiff will note that Defendants do not ask the Court to preclude

Plaintiff from eliciting testimony about how nurses and providers could have made efforts to gather

social history for Damaris as part of their evaluative process. However, Defendants do not seek to

exclude this evidence in the motion, which is simply asking the Court to limit comment on actual

legal liability.[2]

**General MIL 8.   Exclude Argument that Damaris Rodriguez was Treated Differently from Any Other Inmate because of her Race and/or National Origin.**

Plaintiff opposes Defendants' motion to preclude argument that Damaris was treated

differently because of her race and/or national origin. Defendants do not identify specific evidence

which they mean to exclude, instead, making a general declaration that Defendants do not believe

anyone treated Damaris differently based on her race or national origin. However, there is evidence

that at least some NaphCare personnel treated Damaris differently because of their subjective

beliefs about her ability to speak English—an assumption that is inextricably intertwined with race

and national origin.

---

[2] In the second paragraph of MIL 7, NaphCare takes a gratuitous shot at Mr. Gil and implies that he is at fault for his wife's death. Although Plaintiff strenuously disagrees with Defendants' factual recitation and is offended by the premise of this paragraph, this paragraph is also unrelated to MIL 7, so Plaintiff will not respond to those assertions at this time.

PLAINTIFF'S AMENDED OPPOSITION TO THE
NAPHCARE DEFENDANTS' MOTIONS *IN LIMINE* - 10
2:19-cv-01987-RSM

For example, Brittany Martin, the booking nurse—who should have immediately sent Damaris to an emergency room—barely made an effort to speak with Damaris until the second day of her incarceration. The reason for this is because Ms. Martin incorrectly assumed that Damaris could only communicate in Spanish, even though Damaris was a United States citizen who had lived in the United State since her youth and was fluent in English. But as a result of Ms. Martin's assumptions about Damaris, Ms. Martin made no legitimate effort to engage with Damaris until she took a Spanish speaking corrections officer with her the next morning as a translator. Bingham Decl., Exh. C, Martin Dep. at 59:5- 60:1; 68:9-20; 73:12-75:3.This evidence is relevant to Plaintiff's claims. Allowing a mentally ill inmate to sit in a solitary cell with the lights on and no bedding because of an assumption that the inmate only speaks Spanish—based on the way she looks—does not comport with the standard of care and the jury should be allowed to consider this evidence.

### General MIL 9.   Exclude Criticism Against Any NaphCare Practitioner Not a Named Defendant.

Defendants confuse the concepts of being disclosed in discovery with being named as a defendant. Principals act through their agents and may be liable for the torts of their agents, regardless of whether or not the agent is named as a defendant. See, e.g., WPI 105.02.01. A NaphCare employee may subject NaphCare to liability, regardless of whether or not that employee is a named defendant.

### General MIL 10. Exclude Evidence in the Liability Phase Concerning Post-Incident Training and Policy Changes.

While FRE 407 does not permit evidence of subsequent remedial measures to prove "negligence" or "culpable conduct," it does permit the court to "admit this evidence for another

PLAINTIFF'S AMENDED OPPOSITION TO THE
NAPHCARE DEFENDANTS' MOTIONS *IN LIMINE* - 11
2:19-cv-01987-RSM

KRUTCH LINDELL BINGHAM JONES, P.S.
3316 Fuhrman Ave. E
Suite 250
Seattle, Washington 98102
TEL. 206.682.1505 • FAX 206.467.1823

purpose, such as impeachment or—if disputed—proving ownership, control, or the feasibility of precautionary measures."

Plaintiff may seek to offer NaphCare's post-incident policy changes related to the manner in which mentally ill inmates are monitored and automatically sent to an outside hospital when their mental illness makes medical screening difficult. This evidence proves the feasibility of precautionary measures. The evidence of feasibility is especially relevant in this case because NaphCare's 30(b)(6) witness appears intent on denying that such a policy would have been possible to implement before Damaris's incarceration. Bingham Decl., Exh. A.

Plaintiff may also seek to introduce evidence of trainings, which were meant to change NaphCare's custom of not screening mentally ill inmates. The nature and necessity of this training will assist the jury in ascertaining what NaphCare's customs were before the incident because the policy changes and training were meant to address NaphCare's custom of not screening mentally ill inmates.

Defendants' MIL 10 also requests relief that goes beyond remedial measures. Defendants ask the Court to exclude "any post-incident into [sic] evidence." However, not all post-incident evidence constitutes a subsequent remedial measure for purposes of FRE 407. For example, NaphCare's investigation of the incident is not a subsequent remedial measure. *See Aranda v. City of McMinnville*, 942 F. Supp. 2d 1096, 1103–04 (D. Or. 2013); Ma*ddox v. City of L.A.,* 792 F.2d 1408, 1417 (9th Cir.1986).

Post-incident evidence is relevant and admissible for purposes of establishing that NaphCare's policies were deficient under Plaintiff's *Monell* claim. The Ninth Circuit has held that with respect to a *Monell* claim, "post-event evidence is not only admissible for purposes of proving the existence of a municipal defendant's policy or custom, but is highly probative with respect to

PLAINTIFF'S AMENDED OPPOSITION TO THE NAPHCARE DEFENDANTS' MOTIONS *IN LIMINE* - 12 2:19-cv-01987-RSM

**KRUTCH LINDELL BINGHAM JONES, P.S.**
3316 Fuhrman Ave. E
Suite 250
Seattle, Washington 98102
TEL. 206.682.1505 • FAX 206.467.1823

that inquiry." *Henry, supra*, 132 F.3d at 519. Accordingly, questions of whether specific evidence should be excluded as subsequent remedial measures under FRE 407 should be resolved in the appropriate context during trial, and Defendants' motion in limine should be denied at this time.

**General MIL 11. Exclude Surveillance Videos of Damaris Rodriguez**.

This case centers on Damaris's visible mental and physical deterioration that was observed and ignored by Defendants. There is direct evidence of her physical and mental deterioration in the form of surveillance videos. The video evidence is highly probative on numerous contested issues. The following is a partial list of factual disputes that the video will be helpful to resolve:

- Defendants' medical expert, Dr. Abrams, claims that Damaris vomited less than 50ml of liquid (approximately the amount of a shot glass), which he believes means her condition would not have appeared urgent. Bingham Decl., Exh. D, Abrams dep., 122:17-19. However, Defendant Nancy Whitney, a first party witness, described an entirely different fact pattern: "And it looked to me like someone had turned on a garden hose. There was just a very full force of water that she vomited and it took her a few seconds to get it all out." Bingham Decl., Exh. E, Whitney dep., 48:17-21. The video evidence clearly resolves this factual dispute between the fact witness and the expert.
- Defendants' medical expert, Dr. Abrams, believes that Damaris died in a state of excited delirium, whereas Plaintiff believes Damaris died from a metabolic disorder. The video is important to this dispute because it proves Damaris was not in excited delirium (i.e. a highly agitated state) when she died—she was actually asleep or unconscious for hours.
- Defendant Brooke Wallace claims that Damaris appeared to be improving. However, the video evidence shows her seeing Damaris kneeling on the floor with her face on the ground, rocking back and forth. Bingham Decl., Exh. F, Wallace dep. at 92:1-18.
- Defendants are contesting Plaintiff's contention that Damaris was not eating at SCORE, which is relevant to her cause of death. The video evidence resolves this factual dispute by showing the disposition of each meal.
- Defendants are apparently arguing that Damaris did not experience *any* pain and suffering before her death. The video evidence resolves this dispute by showing her vomiting, convulsing, doubled over in pain, and expressing agony on her face.
- Numerous individual defendants claim to have attempted to evaluate Damaris when the video shows that they only gave the most cursory glance without stopping to speak to Damaris. This is relevant to the question of whether the individual defendants exercised due care.

FRE 403 permits exclusion of relevant evidence that is "*substantially outweighed* by a danger of one…unfair prejudice, confusing the issues, misleading the jury, undue delay, or

PLAINTIFF'S AMENDED OPPOSITION TO THE NAPHCARE DEFENDANTS' MOTIONS *IN LIMINE* - 13
2:19-cv-01987-RSM

**KRUTCH LINDELL BINGHAM JONES, P.S.**
3316 Fuhrman Ave. E
Suite 250
Seattle, Washington 98102
TEL. 206.682.1505 • FAX 206.467.1823

needlessly presenting cumulative evidence." (emphasis added). The term "substantially outweighed" is important and should not be easily discarded because exclusion of "relevant evidence" is at stake. It is well-established that Rule 403 "favors admission." *United States v. Gross*, 424 F. Supp. 3d 800, 809 (C.D. Cal. 2019) ("Rule 403's balancing test favors admission…"). Rule 403 is not a tool to exclude evidence that a party does not like or does not find helpful to its side of the case. *Vaughn v. Target Corp.,* No. 3:13-CV-521-DJH, 2015 WL 632255, at *2 (W.D. Ky. Feb. 13, 2015) ("[u]nfair prejudice does not mean the damage to a [party's] case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest a decision on an improper basis."). However, that is how Defendants seek to use Rule 403 here – to exclude the most direct critical probative evidence on the matters centrally at issue in the case because Defendants find that evidence of what actually happened to Damaris is inconvenient to their defense.

When the matters at issue in a case concern the events that occurred at a jail, jail surveillance video showing what actually happened is highly probative and should not be excluded. *United States v. Patrick*, 513 F. App'x 882, 887–89 (11th Cir. 2013). In *Patrick*, the court held that jail surveillance videos "depicting the very events underlying the assault charge against" the defendant should not have been excluded by the district court. *Id.* at 887. In so holding, the court held that the videos should have been permitted despite the fact that the defendant was willing to concede to facts depicted in the videos. *Id.* The court further stated that the defendant's "concessions and the existence of live witnesses who could testify about the events also do not negate or significantly detract from the probative value of the videos." *Id.*

KRUTCH LINDELL BINGHAM JONES, P.S.
3316 Fuhrman Ave. E
Suite 250
Seattle, Washington 98102
TEL. 206.682.1505 • FAX 206.467.1823

The *Patrick* court rejected the premise that the videos were unfairly prejudicial because they depict the assault at issue and were, as the defendant claimed, "emotionally charged", "dramatic", and "graphic." *Id.* at 888. The *Patrick* court explained:

> That the videos only present a portion of the assault does not render them unduly prejudicial, especially not to the degree that the risk of unfair prejudice substantially outweighs the probative value of the evidence. A video recording of only a portion of the events is not inherently less admissible than the testimony of a live witness who saw only part of a crime or a photograph that captures an isolated moment from a single perspective.

*Id.*

Here, the surveillance videos are crucial to the central matters in dispute and were not generated by the Plaintiff. If they result in any juror sympathy it is strictly because of what they depict about the *facts* regarding Damaris's actual treatment and condition, but any such sympathy does not come close to constituting unfair prejudice that could outweigh the critical probative importance of these surveillance videos.

**Expert MIL 1.    Exclude Evidence from Plaintiff's Experts Not Contained in Their Rule 26 Reports.**

Defendants' Expert MIL 1 does not address any specific evidence it seeks to exclude and should be denied as an improper request for an advisory opinion about what the rules require. If this motion is granted, the order should apply reciprocally.

**Expert MIL 2.    Prohibit Any Expert from Offering Testimony Tantamount to a Legal Conclusion.**

Plaintiff does not oppose prohibiting expert testimony tantamount to a legal conclusion. If this motion is granted, the order should apply reciprocally.

**Expert MIL 3.    Prohibit Expert Testimony Based on a Personal or Subjective Standard of Care.**

**KRUTCH LINDELL BINGHAM JONES, P.S.**
3316 Fuhrman Ave. E
Suite 250
Seattle, Washington 98102
TEL. 206.682.1505 • FAX 206.467.1823

Plaintiff does not oppose disallowing expert testimony based on an expert's personal or subjective opinion on the standard of care. The limitation should of course apply equally to Defendants' experts. Though not actually germane to the relief requested in this motion in limine, Plaintiff notes that defendants again misstate Washington's healthcare malpractice standard of care as not including the expectations of society.

**Expert MIL 4.    Prohibit Any Expert from Offering an Opinion Outside Their Area of Expertise.**

Plaintiff does not oppose prohibiting experts from opining on areas outside their expertise. If an order is issued on this motion, it should apply equally to Defendants' experts. To the extent Defendants attempted to sneak into this motion miniature *Daubert* challenges to the qualifications of Plaintiff's experts, such arguments should be disregarded or not otherwise result in specific orders against these experts. These arguments are untimely and incomplete.

**Damages MIL 1.  Prohibit Reference to Damaris Rodriguez's Pre-Death Pain and Suffering.**

Defendants seek to preclude "reference" to Damaris's pre-death pain and suffering because they contend "none of the experts retain (sic) by the plaintiff have offered any such opinion" "that Damaris Rodriguez consciously experienced pre-death fear or pain for an appreciable time prior to her death." (Dkt. 222 p. 16).

This is not a case where injury and death were nearly simultaneous. Damaris's pain and suffering lasted for days and is visible on video and apparent even to a lay person.[3] There will also be ample testimony by expert witnesses and witnesses with specialized knowledge that Damaris

---

[3] Defendants even seek to exclude these videos because they might make jurors sympathetic to Damaris's suffering, so apparently Defendants agree there is evidence of pain and suffering.

**KRUTCH LINDELL BINGHAM JONES, P.S.** 3316 Fuhrman Ave. E Suite 250 Seattle, Washington 98102 TEL. 206.682.1505 • FAX 206.467.1823

was in a state of physical and mental suffering during her incarceration to support an award of pain

and suffering:

- Dr. Jennifer Piel will describe Damaris's intense state of disorientation and confusion. *See, e.g.*, Dkt. 84.
- Dr. Wigren will describe how Damaris experienced a mentally and physically agonizing death over an extended period of time. *See, e.g.,* Dkt. 85.
- Rebecca Luethy, RN, will describe the numerous signs of mentally distressing and physically painful conditions that NaphCare's nurses were trained to observe but either did not notice or observed and ignored. *See e.g.,* Dkt. 83.
- Defendant Nancy Whitney, MHP, acknowledges that Damaris was choking herself, gagging, and vomiting.
- Defendant Rebecca Villacorta, RN, acknowledges that Damaris was choking herself, gagging, and vomiting.
- Although he disagrees on the severity of the likely symptoms, Dr. Vilke acknowledges that an individual with a low sodium level like Damaris's would have at least experienced nausea, vomiting, and a headache. Vilke dep. at 72:1-23.

Further, extensive expert testimony directly on pre-death pain and suffering is not

necessary. *Nunez v. Santos*, 427 F. Supp. 3d 1165, 1191–93 (N.D. Cal. 2019) (circumstantial

evidence and expert testimony regarding the injuries caused by gunshots was enough to support

an award of conscious pain and suffering even though the expert did not directly opine on any pain

suffered by the decedent and the suffering would have been of extremely short duration).

### Damages MIL 2.  Limit Testimony or Comment about a Beneficiary's Emotional Distress.

This issue does not appear to be in controversy. To the extent NaphCare's motion in limine

is simply attempting to assure that Plaintiff does not contradict their prior representations to the

Court, Plaintiff has no objection. To the extent NaphCare's motion in limine is seeking to exclude

anything further, Plaintiff opposes the motion.

### Damages MIL 3.  Preclude Evidence or Argument as to the Beneficiaries' Bereavement and Sadness.

Defendants' motion in limine to preclude evidence of beneficiaries' grief, anguish, or

bereavement should be denied because it would result in exclusion of evidence probative to

**KRUTCH LINDELL BINGHAM JONES, P.S.** 3316 Fuhrman Ave. E Suite 250 Seattle, Washington 98102 TEL. 206.682.1505 • FAX 206.467.1823

damages for loss of love, affection, care, and companionship, which defendants concede are recoverable.

In *Est. of Gee ex rel. Beeman v. Bloomington Hosp.*, No. 1:06-CV-00094-TWP, 2012 WL 639517, at *10 (S.D. Ind. Feb. 27, 2012) the federal district court faced a similar motion in limine under Indiana wrongful death law. The court recognized that "testimony relating to loss of 'love and companionship' is not easily separable from testimony relating to 'grief.'" *Id.* The court held that the plaintiff could not testify "specifically with respect to grief" but the plaintiff could testify about loss of love and companionship and "[a]s a practical matter, this parsing should take place during the course at trial." *Id.* While the court granted the defendant's motion in limine it did so "only to grief-specific testimony, while acknowledging that this concept is, to some degree, inextricably linked with 'loss of love and companionship.'" *Id.* Plaintiff submits that the better and more appropriate approach is to not issue an advance in limine order on this matter at all (unless strictly limited to actual argument that the jury should award damages for "grief"), because the overlap between wholly appropriate evidence supporting loss of love, affection, care, and companionship, and evidence supporting "grief" is simply *too great* and *inextricable*.

**Damages MIL 4.   Preclude Parties from Making *Per Diem* Arguments for Pain and Suffering.**

Plaintiff is unaware of any blanket prohibition on *per diem* arguments (nor do Defendants cite a case), and numerous courts have allowed them. *See, e.g., Vanskike v. ACF Indus.*, 665 F.2d 188, 211 (8th Cir.1981), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982) ("although we continue to condemn ***instructions*** requiring per diem mathematical calculations, we do not disapprove of ***per diem closing arguments***" (emphasis added)) *Padgett v. Southern R. CO.*, 396 F.2d 303, 308–09 (6th Cir.1968) (observing that arguments of counsel are not evidence and allowing *per diem* argument). The secondary sources NaphCare relies on appear to be referencing

the propriety of *per diem* calculations in ***jury instructions***. Dkt. 222 at 18:3 ("instructions requiring

per diem calculations…"). Jury instructions are not at issue in this motion in limine.

PLAINTIFF'S AMENDED OPPOSITION TO THE
NAPHCARE DEFENDANTS' MOTIONS *IN LIMINE* - 19
2:19-cv-01987-RSM

**Krutch Lindell Bingham Jones, P.S.**
3316 Fuhrman Ave. E
Suite 250
Seattle, Washington 98102
TEL. 206.682.1505 • FAX 206.467.1823

1

Respectfully submitted this 20th day of January, 2022.

2

KRUTCH LINDELL BINGHAM JONES, P.S.

3

By: /s/ J. Nathan Bingham, WSBA #46325

4

J. Nathan Bingham, WSBA #46325
Jeffrey C. Jones, WSBA #7670

5

James T. Anderson, WSBA #40494
Matthew C. Clarke, *pro hac vice*

6

3316 Fuhrman Ave E, Suite 250
Seattle, Washington 98102

7

Telephone: (206) 682-1505
Facsimile: (206) 467-1823

8

Email: jnb@krutchlindell.com

9

jcj@krutchlindell.com
jta@krutchlindell.com

10

mkc@krutchlindell.com

11

TERRELL MARSHALL LAW GROUP PLLC

12

By:  /s/ Toby J. Marshall, WSBA #32726

13

Toby J. Marshall, WSBA #32726
936 North 34th Street, Suite 300

14

Seattle, Washington 98103-8869
Telephone: (206) 816-6603

15

Facsimile: (206) 319-5450
Email: tmarshall@terrellmarshall.com

16

17

*Attorneys for Plaintiffs*

18

19

20

21

22

23

24

25

26

27

PLAINTIFF'S AMENDED OPPOSITION TO THE
NAPHCARE DEFENDANTS' MOTIONS *IN LIMINE* - 20
2:19-cv-01987-RSM

1

## CERTIFICATE OF SERVICE

2

3          The undersigned certifies under penalty of perjury under the laws of the State of

Washington that on this date I caused to be served in the manner indicated a copy of the

4

foregoing document upon the following persons:

5

6

| Heidi L. Mandt<br>Erin J. Varriano<br>WILLIAMS KASTNER<br>hmandt@williamskastner.com<br>evarriano@williamskastner.com<br>lpavey@williamskastner.com<br><br>*Attorneys for Defendants NaphCare, Inc.,*<br>*Rebecca Villacorta, Henry Tambe, Nancy*<br>*Whitney, Billie Stockton, Brittany Martin,*<br>*Brooke Wallace, Sally Mukwana, Joan Kosanke,*<br>*and Rita Whitman* | [ ]   Via First Class Mail, postage<br>         prepaid<br>[ ]   Via Facsimile<br>[ ]   Via Messenger<br>[X]   Via E-Mail/E-Service |
|---|---|

7

8

9

10

11

12

13

14          DATED this 20th day of January, 2022.

15                                                   KRUTCH LINDELL BINGHAM JONES, P.S.

16                                                   By:  /s/ *Pia Kim*
                                                          Pia Kim, Legal Assistant
17                                                        3316 Fuhrman Avenue E. Suite 250,
                                                          Seattle, Washington 98102
18                                                        Telephone: (206) 892-3117
                                                          pia@krutchlindell.com
19

20

21

22

23

24

25

26

27

PLAINTIFF'S AMENDED OPPOSITION TO THE
NAPHCARE DEFENDANTS' MOTIONS *IN LIMINE* - 21
2:19-cv-01987-RSM