UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RUSSEL H. DAWSON, Personal
Representative of the Estate of Damaris
Rodriguez,

              Plaintiff,

              v.

NAPHCARE, INC., an Alabama Corporation,
et al.,

              Defendants.

Case No. C19-1987RSM

ORDER RE: MOTIONS IN LIMINE

## I.      INTRODUCTION

This matter comes before the Court on the parties' Agreed Motions in Limine, Dkt. #224, Plaintiff's Motions in Limine, Dkt. #219, and Defendants' Motions in Limine, Dkt. #222. The Court has determined it can rule on the instant Motions without oral argument.  For the reasons below, these Motions are GRANTED, DENIED, and DEFERRED as stated below.

## II.      AGREED MOTIONS IN LIMINE

The Court GRANTS the parties' agreed motions in limine as stated below:

1.  The parties agree not to elicit testimony by lay witnesses and/or non-medical experts referencing the King County Medical Examiner's initial cause of death conclusion about sudden death in excited delirium.

2.  The parties agree that defense vocational expert Shelley Lewis will not:

    a.  offer testimony about medical issues unrelated to Damaris Rodriguez's cause of death;

ORDER RE: MOTIONS IN LIMINE - 1

b.   offer an opinion that Damaris's psychological/psychiatric issues impacted her earning capacity; or,

c.   offer an opinion that the unproven criminal charge against Damaris could have impacted her earning capacity, had Damaris survived.

3.  The parties agree that NaphCare will not make any comparative fault arguments relating to Damaris's children.

4.  The parties disagree about whether Reynaldo and Damaris were comparatively at fault. However, the parties do agree that the Court's decision on Plaintiff's pending motion for summary judgment on comparative fault, Dkt. #106, will resolve this disagreement.

5.  The parties agree not to elicit testimony or evidence related to legal claims Plaintiff brought against other Defendants, which have since been dismissed. This agreement relates only to the legal pleadings and claims, and it is not intended to address the underlying facts or allocation of fault issues in any way.

6.  The parties agree not to elicit testimony or evidence of Plaintiff's compromises with other Defendants.

7.  The parties agree not to elicit testimony or evidence related to litigation expenses, with the exception of costs/expenses paid to testifying experts.

8.  The parties agree not to elicit testimony or evidence related to any contact the decedent or beneficiaries had with law enforcement prior to December 2017.

9.  The parties agree not to elicit testimony or evidence or make arguments that Damaris would have had a shortened life expectancy had this incident not occurred.

10. The parties agree not to elicit testimony or evidence or make arguments that Reynaldo dated after Damaris's death or about the likelihood of remarriage.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11. The parties agree that Chris Nielsen will not be called as a witness.

12. The parties agree that Greg Davis will not offer opinions about:

    a.   Damaris's life expectancy, had this incident not occurred; or,

    b.   The standard of care.

13. The parties agree that Virginia Richardson will not be permitted to testify that Nancy Whitney notified Ms. Richardson about Damaris being moved to a dry cell because Ms. Richardson has no personal recollection or record of this occurring, other than the information withheld based on attorney-client privilege.

14. The parties will refrain from offering any testimony, inference, or suggestion referencing the fact that the parties have filed motions in limine or that this court excluded evidence pursuant to a motion made by or on behalf of any party.

15. The parties agree to exclude arguments or inferences at trial which invite the jurors to conceptually put themselves in the place of Damaris Rodriguez or the statutory beneficiaries (the prohibited "Golden Rule" argument).

16. The parties agree to exclude any statement or argument that the NaphCare defendants made Plaintiff go to trial or refused to settle.

17. All non-party witnesses shall be excluded from the courtroom until released by the court or until closing argument, unless it is shown that such witness is essential to presenting a claim or defense.

18. The parties agree that, in voir dire or opening statement, or in questions to any witness, they will not mention or refer to what the probable testimony of a witness might be, when that witness will not be or may not be testifying at trial.

19. The parties agree that the deposition testimony given by a non-party witness will not be read or shown during opening statement.

20. The parties agree to not display exhibits until the exhibit is admitted by the Court into evidence, or until permission has been obtained from the Court.

21. All parties agree that they will provide the Court and attorneys at least 24-hours' notice of each witness to be called to testify to facilitate a prompt and orderly presentation of witnesses and to expedite this trial.

22. The parties agree that photographs taken of the decedent Damaris Rodriguez following her death or during her autopsy should be excluded as they are irrelevant to any material issue is this case and will not be introduced absent obtaining permission from the Court to do so.

23. The parties agree that there will be no claim or argument that the plaintiff is or is not "in it for the money."

24. Plaintiff will not present evidence of or make a claim for litigation-induced stress.

25. As the parties have stipulated that the trial of this matter should be separated into a liability phase and a punitive damage phase, the parties further stipulate that the following evidence and/or argument is only relevant to the claim of punitive damages and will not be introduced during the liability phase:

   a.  evidence solely relevant to the issue of punitive damages, such an NaphCare's financial worth or the yearly salary of any NaphCare employee defendant.

   b.  evidence relating to NaphCare's insurance or lack thereof.

   c.  Suggestion that NaphCare or the NaphCare employee defendants must be "taught a lesson," "should be punished" for their alleged conduct, or the like.

ORDER RE: MOTIONS IN LIMINE - 4

The parties agree that such comments are only appropriate if punitive damages are allowed.

   d.   Evidence or argument related to the issue of deterrence.

   e.   Evidence of or argument as to remedies not sought by the plaintiff, such as an apology, changes in the provision of care, "I want to make sure this never happens to anyone else," etc.

26. There will be no introduction of newspaper articles or other media concerning the facts of this case, injuries or deaths at other facilities where NaphCare provides medical care or with regard to NaphCare's provision of medical services in general.

27. The parties agree that evidence from any NaphCare personnel files will not be referenced in opening statements and Plaintiff will address the basis for attempting to admit any such evidence with the Court before eliciting testimony or showing the personnel files to the jury.

## III.   PLAINTIFF'S MOTIONS IN LIMINE

1. Plaintiff first moves to exclude "hearsay statements by unidentified corrections officers that Damaris was observed eating." Defendants state that witness Nancy Whitney will testify she spoke with "medical officers… who were identified via video" and that they reported to her that Ms. Rodriguez "was eating." This strikes the Court as hearsay testimony. Whether or not she was eating relates directly to the care offered by Naphcare, a central issue in this case. Defendants raise the present sense and business records exceptions to the hearsay rule. *See* FRE 803(1) and (6). The present sense exception does not apply to Ms. Whitney's testimony as stated in briefing because she would be testifying as to what someone else said they observed days or hours

1
2
3
4
5
6

previously, not a statement "made while or immediately after the declarant perceived it." FRE 803(1).  The business records exception does not apply to Ms. Whitney's testimony that someone else told her Ms. Rodriguez was eating, as such statements were not a business record.  Ms. Whitney and others are otherwise free to testify as to references to eating kept in ordinary NaphCare records.  GRANTED.

7
8
9
10
11
12

2.  Plaintiff moves under FRE 403 to exclude testimony by defense expert Kathryn Wild relating to a SCORE chart note by Corrections Officer Woo.  Plaintiff argues that this chart note was inaccurate and inconsistent with surveillance video.  The Court finds that this issue goes to the weight of Ms. Wild's testimony and can be addressed on cross-examination.  DENIED.

13
14
15
16
17
18
19

3.  Plaintiff moves to exclude "expert testimony stating or implying that Damaris was under the influence of drugs or alcohol."  There is no evidence that Ms. Rodriguez was under the influence of drugs or alcohol, however Defendants may have erroneously believed such was the case and acted on such beliefs.  Nevertheless, Defendants state that they "do not intend to introduce evidence that Ms. Rodriguez was under the influence of drugs or alcohol."  GRANTED.

20
21
22
23
24
25
26
27
28

4.  Plaintiff moves under FRE 602 and FRE 802 to exclude testimony by Rebecca Villacorta that Damaris's condition was improving as based on hearsay and not personal knowledge.  Ms. Villacorta's conclusion that Damaris's condition was improving over the course of her incarceration was based on information that was given to her by others.  Ms. Villacorta may not testify that Damaris's condition was in fact improving, but may testify that she believed Damaris's condition was improving so long as such is relevant to an issue other than Damaris's actual condition.  GRANTED IN PART.

5. Plaintiff moves to exclude evidence or argument regarding settlement or settlement negotiations under FRE 408. This is a standard motion in limine, routinely granted by this Court. Defendants object to this Motion to the extent it prevents them from using Plaintiff's $2,000,000 settlement with the SCORE defendants as a means to demonstrate bias in SCORE witnesses. Dkt. #232 at 10 ("Several previously dismissed SCORE employees have been identified as trial witnesses. Should any witness's trial testimony depart from their deposition, it may be relevant for the trier of fact to be aware of any purchased nature of the testimony."). Offering evidence of settlement is expressly permitted to show a witness's bias under FRE 408(b). However, it is not clear what evidence Defendants plan to offer to show that testimony has been purchased, other than the amount of the settlement, which could be more prejudicial than probative. The Court will DEFER ruling on this issue and require Defendants to make an offer of proof outside the presence of the jury before referencing this type of evidence. Defendants are otherwise free to inform the jury that the SCORE Defendants have settled out of this case without reference to the terms of that settlement.

6. Plaintiff moves to exclude expert testimony from Alan Abrams, MD as to excited delirium. Defendants point out that this is clearly a motion to exclude expert testimony, required by Local Civil Rule 16(b)(4) to be filed no later than the deadline for dispositive motions, which passed on July 20, 2021. The Court agrees that this Motion is procedurally improper. DENIED. Plaintiff is free to object to specific testimony at trial.

//

//

ORDER RE: MOTIONS IN LIMINE - 7

## IV.   DEFENDANTS' MOTIONS IN LIMINE

Plaintiffs initially filed a response brief to Defendants' Motions in limine that exceeded the applicable page limit.  The Court will strike that filing and will instead consider Plaintiff's second response brief, which apologized for the error and was limited to the appropriate number of pages.  The Court finds that Defendants have not been prejudiced by this substitution.

1. Defendants first move to preclude Plaintiff from using surveillance video and clips from video depositions in the opening statement.  Plaintiff stipulates to not showing deposition clips and does not oppose that portion of the Motion.  Plaintiff only intends to show surveillance video clips where Defendants have agreed to the authenticity.  The Court finds that these clips will likely be admissible and that Defendants have demonstrated no valid basis for exclusion under FRE 401-403.  DENIED.

2. Defendants' motion to preclude "reptile" tactics is not a proper motion in limine; does not address any specific evidence; is overly broad, undefined and ambiguous; and improperly requests broad prior restraint on Plaintiff's trial strategy and presentation without adequate justification.  To the extent any evidence or argument refers to evidence that is more prejudicial than probative, such can be addressed via objection at trial.  Statements made by counsel that are contrary to law can be addressed in closing arguments or discussed when the Court prepares jury instructions.  DENIED.

3. Defendants move to exclude argument or testimony that failing to follow a policy manual establishes negligence or a constitutional violation.  Plaintiff agrees that "there is no dispute that failure to follow NaphCare internal policies or procedures does not conclusively establish negligence or a constitutional violation as a matter of law…" Dkt. #235 at 4.  However, Plaintiff cites several cases where internal policies have been

used to demonstrate negligence.   The Court finds that Defendants' violations of NaphCare's internal policies can serve as relevant evidence to support Plaintiff's negligence claim.  *See Joyce v. State, Dep't of Corr.*, 155 Wn. 2d 306, 324, 119 P.3d 825 (2005).   RCW 5.40.050 does not prohibit the use of such evidence. Defendants have failed to convince the Court that testimony concerning such policies would confuse the jury. Accordingly, Defendants have failed to set forth a valid basis for its exclusion. DENIED.

4.  Defendants move to exclude audits and reports on the SCORE facility prepared by NCCHC Resources, Inc. and Disability Rights Washington in 2016 and 2017. Defendants argue that such reports do "not set the standard of care to which the NaphCare defendants are held." Dkt. #222 at 6.  Defendants argue that the reports are hearsay and prejudicial and should be excluded under FRE 401, 403, and 802. Defendants say there is no evidence that NaphCare was provided the reports or relied on them.  Plaintiff contends that the 2016 Disability Rights Washington report is relevant evidence that NaphCare was on notice of the dangers in its policies.  Plaintiff argues that these reports are not being offered for the truth of the matter asserted but as notice evidence.  Plaintiff points out that Defendant Whitney, NaphCare's Director of Mental Health, testified in deposition that she was aware of the collaboration of Disability Rights Washington and SCORE that ultimately resulted in the report and that the report was provided to her. Dkt. #235 at 7 (citing Dkt. #178-14 at 141:16-142:15).  The Court finds that there is evidence to support that at least one of the Defendants was on notice as to the existence of this report and that she may have reviewed it.  As to the NCCHC reports, Plaintiff has attached evidence that Defendant Villacorta was aware of the

reports and drafted a letter summarizing them. *Id.* at 8 (citing Dkt. #321-2). These reports are admissible as notice evidence. There is no basis to challenge the authenticity of these reports based on the present record, and Plaintiff can further establish their authenticity at trial through the above fact witnesses if necessary. DENIED.

5. Defendants move to exclude references to other inmate deaths or health incidents, as well as claims or lawsuits brought against NaphCare, as impermissible character evidence and more prejudicial than probative. Defendants do not point to any specific events for the Court to be able to weigh these concerns. Such evidence may be admissible for an issue other than Defendants' character. DENIED.

6. Defendants move to preclude argument that NaphCare is liable for negligent hiring, training, or supervision as "immaterial" to Plaintiff's negligence claim, given that NaphCare has admitted it is vicariously liable for the negligent acts of its employees. Dkt. # 222 at 8 (citing cases). At the same time, Defendants admit that such evidence remains relevant to Plaintiff's § 1983 claims. *Id.* at 9 n.8. Because such evidence is relevant to at least one of Plaintiff's claims, Defendants have failed to present a basis to exclude it from trial. Defendants are free to clarify this situation to the jury in closing arguments and via jury instructions if necessary. DENIED.

7. Defendants move to preclude argument that Defendants are liable for not contacting Ms. Rodriguez's family after she was arrested. Plaintiff agrees that such cannot establish liability and does not oppose this Motion. GRANTED.

8. Defendants move to exclude evidence or argument that Ms. Rodriguez was treated differently based on her race or national origin, citing FRE 403. Plaintiff points to evidence that a language barrier affected the treatment of Ms. Rodriguez. The Court

ORDER RE: MOTIONS IN LIMINE - 10

finds that Plaintiff can present such evidence, that it may support the argument that she was treated differently based on her race or national origin, and that such is relevant for the jury to understand how and why Ms. Rodriguez received this level of care. Defendants have failed to specifically identify arguments or evidence that should be excluded under FRE 401 or 403.  DENIED.

9. Defendants move to exclude "criticism against any NaphCare Practitioner not a named Defendant," arguing that such would be trial by ambush and confuse the jury.  Plaintiff states simply that a NaphCare employee may subject NaphCare to liability, regardless of whether or not that employee is a named defendant.  The Court cannot grant this Motion with so little information.  DENIED.  Defendants are free to object at trial to evidence that was not properly disclosed in discovery.

10. Defendants move to exclude evidence in the liability phase concerning post-incident training and policy changes under FRE 407.  While FRE 407 does not permit evidence of subsequent remedial measures to prove "negligence" or "culpable conduct," it does permit the court to "admit this evidence for another purpose, such as impeachment or… the feasibility of precautionary measures."  Plaintiff argues that certain post-incident policy changes (related to the transfer of mentally ill inmates to an outside hospital when mental illness makes screening difficult) serve as evidence of feasibility, and that this is relevant because Defendants may testify that such a policy would not have been feasible. The Court agrees with Plaintiff that such evidence may be admissible as impeachment or feasibility evidence, depending on the testimony of NaphCare witnesses.  GRANTED IN PART, DENIED IN PART.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

11. Defendants move to exclude surveillance videos of Ms. Rodriguez—evidence that, up to this point, served as the centerpiece of Plaintiff's case.  Defendants state:

> Throughout the course of discovery in this case, plaintiff has relied on short, edited clips of the SCORE surveillance video to frame their theory of the case that Damaris Rodriguez as [sic] severely impaired during the four days she was incarcerated. While a clip or two may be relevant, showing video after video of the decedent risks eliciting the sympathy of the jury in a way that is unfairly prejudicial to the defendants. *See*, Fed.R.Evid. 403.

Dkt. #222 at 11.  The surveillance video, though prejudicial, is not unfairly prejudicial and remains highly probative.  It will be permitted.  Defendants next request that Plaintiff "be required to show both the interior of Damaris Rodriguez's cell and the exterior of the cell at the same time so as not to confuse the jury" and that counsel be instructed to refrain from "narrating" over the video.  *Id*. at 11–12.  Defendants request that the Court prohibit fact witnesses from being asked speculative questions related to the video.  Plaintiff does not address any of these additional requests.  The Court finds it overly burdensome to require Plaintiff to show both the interior and exterior of the cell at the same time and is not convinced that such would necessarily reduce jury confusion.  Defendants are free to prepare such video and use it on cross examination.  The Court is willing to prohibit narration over video and will sustain such an objection.  Objections to questions that call for speculation will be sustained.  Otherwise, this Motion is DENIED.

12. (Expert Motions in Limine 1 through 4).  Defendants move to exclude evidence from Plaintiff's expert witnesses not contained in their Rule 26 reports, to exclude expert testimony tantamount to a legal conclusion, to prohibit expert testimony based on a personal or subjective standard of care, and to prohibit experts from offering opinions outside their area of expertise.  Plaintiff does not oppose any of these broad, generic

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

motions in limine and argues that the same should apply reciprocally to Defendants' Experts.  The Court believes the parties should have stipulated to these Motions. To the extent such a ruling can provide clarity to the parties, all of these Motions are GRANTED.

13. Defendants move to prohibit damages for Ms. Rodriguez's pre-death pain and suffering, arguing that Plaintiff cannot present the required evidence that the decedent consciously experienced pain and suffering for measurable time between injury and death.  Dkt. #222 at 16 (citing *Otani v. Broudy*, 151 Wn.2d 750, 762 (2004)).  Defendants argue that Plaintiff's expert has not offered such an opinion on this issue and that a lay witness cannot testify as to this issue.  The Court finds that Defendants do not have a leg to stand on—the surveillance video will show a woman suffering prior to her death.  The cause of death was not instantaneous.  Plaintiff points to testimony from witnesses who will testify as to Ms. Rodriguez's suffering.  *See* Dkt. #235 at 17.  Plaintiff appears to have significantly more evidence to support this kind of damages claim than the average case where such is permitted.  DENIED.

14. Defendants seek to limit Plaintiff to garden variety emotional distress damages and to exclude reference to counseling or treatment received by any of the beneficiaries, other medical treatment or medication, the need for a specialized education plan, and impact on wage earning capacity.  Plaintiff does not object.  GRANTED.

15. Defendants move to exclude evidence as to the beneficiaries' bereavement and sadness, while still permitting damages for loss of "services, love, affection, care, companionship, and consortium."  Plaintiff points out that testimony related to loss of love and companionship is not easily separable from testimony for grief.  The Court

believes the experienced counsel in this case can navigate these waters through direct and cross examination.  Direct evidence of grief is excluded. GRANTED.

16. Defendants move to exclude "per diem arguments for pain and suffering," citing treatises that have discussed the issue.  Dkt. #222 at 17–18.  Plaintiff argues that numerous courts have allowed per diem type arguments.  Dkt. #235 at 18 (citing cases). Plaintiff contends that this issue is best left for jury instructions.  The Court DEFERS ruling on this issue until it is raised at trial or in jury instruction discussions.

## V.     CONCLUSION

Having reviewed the relevant briefing and the remainder of the record, the Court hereby finds and ORDERS that the above Motions in Limine (Dkts. #219, #222, and #224) are GRANTED, DENIED, AND DEFERRED as stated above.  The Court GRANTS Defendants' Motion to Strike, Dkt. #234, and STRIKES Plaintiff's response brief at Dkt. #230.

DATED this 24th day of January, 2022.



RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER RE: MOTIONS IN LIMINE - 14